(No. 30258.—

THE PEOPLE *ex rel.* George F. Barrett, Attorney General, Appellee, *vs.* MELVIN THILLENS, doing business as North Town's Check Cashing Service, Appellant.

*Opinion filed May 20, 1948.*

ORR, LEWIS & ORR, and JOSEPH L. KADISON, (WARREN H. ORR, WALLACE W. ORR, and HASKELL F. LAMM, of counsel,) all of Chicago, for appellant.

GEORGE F. BARRETT, Attorney General, of Springfield, (WILLIAM C. WINES, of Chicago, of counsel,) for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

This is a direct appeal from a final decree in equity of the circuit court of Cook County, which enjoined appellant, Melvin Thillens, from operating a fleet of armored trucks engaged in delivering money for payroll checks, on

the ground that appellant violated the provisions of the Community Currency Exchange Act. (Ill. Rev. Stat. 1947, chap. 16½, pars. 31-56.) It is claimed that the decree deprived the appellant of property without due process of law, and, also, that if the Community Currency Exchange Act is construed to cover the business in which appellant is engaged it is unconstitutional.

The complaint in this case was filed by the People upon the relation of the Attorney General, and alleged that appellant was operating a community currency exchange at No. 2351 West Devon Avenue, in Chicago, and that the mode whereby the defendant operated such exchange was by armored automobile trucks, stopping them around large industrial plants and cashing payroll checks; and, further, that the hazards of operating such trucks constituted a public nuisance, and prayed for an injunction.

The answer of the appellant admits he does operate a community currency exchange, and has for several years past; denies he operates such exchange by operating trucks, or that by such trucks he renders the service of the community currency exchange; admits he owns and operates armored vehicles which he operates as his own private business for the sole purpose of cashing payroll checks of employees of industrial companies, pursuant to a contract with such industrial companies; denies that said trucks issue money orders, or that they provide any of the services defined by the Community Currency Exchange Act as the operations of a currency exchange; states that this service is not open to the public but is furnished in pursuance of private contracts with various industries, and that the only checks cashed are the payroll checks of the company employing appellant, and that nobody else can cash a check at said trucks. The answer avers appellant has contracts with over four hundred industries, and that the maximum charge per check is ten cents; that appellant's business does not constitute a nuisance but, on the con-

trary, is of great value to people generally, and that the operation of the trucks has been construed by the Auditor of Public Accounts as not being within the purview of the said Community Currency Exchange Act; and, further, that if such Currency Exchange Act is deemed to prohibit appellant's truck operations, the act is unconstitutional and void, in that the law prohibits the doing of a harmless and useful business and deprives appellant of his liberty and property without due process of law.

After the evidence was heard by the chancellor a decree was entered perpetually enjoining the appellant from cashing checks, drafts, bills of exchange, or other commercial instruments for fee or service charge, either from a motor truck or otherwise, at any place or upon any premises with respect to which he does not have a license under the Community Currency Exchange Act, and for which premises he does not have a lease, as provided by that act. The appeal to this court followed.

It will be observed that the effect of this decree is to prohibit the appellant from delivering any money in his trucks to any premises aside from the premises licensed as a community currency exchange upon which he has a lease.

The facts in the case are substantially without dispute. Appellant owns a license for a Community Currency Exchange at No. 2351 Devon Avenue in Chicago. At that place of business he does all of the different types of business authorized by the Community Currency Exchange Act. He has operated this place for many years. In 1934 the appellant commenced an armored truck payroll cash service. He was directed by the State Auditor to segregate his armored truck operations from that of his community currency exchange operations, and complied with such direction. The armored truck system is operated by the appellant distinct and separate from the exchange. It is not available for, and does not serve, the general public of the local community neighborhood where the exchange is

located. The service is rendered solely to business establishments, wherever located in the entire Chicago area, and only by prior private contractual arrangement between the appellant and such firms under contract. The defendant is obligated to transport currency to the contracting firm for the purpose of cashing payroll checks of the company at the time their pay is due. The currency is carried in armored trucks, which are owned and operated by the appellant. The fund so transported is the property of appellant. The payroll checks of the employees of the contracting concerns are cashed by the appellant upon the premises of the company serviced; at times the payroll checks are cashed in some central point upon the premises, and in other cases they are cashed at the individual work bench or station of the employee, the currency so used being transported in small cars protected by armed guards. The only service rendered by appellant's armored trucks is the cashing of payroll checks, and only those of the employer contracting for the service. The truck service does not cash any other orders or evidences of money, and does not cash all checks, but payroll checks only of the serviced employer. No money orders are issued or sold by the mobile service at any time, under any circumstances; neither does the mobile service accept any money for the payment of local utility bills, nor accept any checks for collection. The payroll checks are purchased outright by appellant. Any loss which occurs in connection with the transaction is borne by appellant, and no loss can accrue to anybody else. The charge made is five cents for each check cashed under $10, and ten cents for all payroll checks cashed over $10; no more. Some employers pay the charges of appellant for cashing the payroll checks of the employees, and in such case no charge is made to the employees by appellant.

For the past few years appellant has been servicing four hundred industrial concerns in the Chicago area, and

cashing payroll checks in a face amount of over $10,000,000 per month, and renders this service to approximately 75,000 employees of the said concerns. The injunction issued will destroy this business unless four hundred licenses are obtained by appellant to deliver money to each employer's place of business, under the decree of the circuit court. At the present license rate this would cost appellant over $20,000 per year, and this requirement, it is claimed, amounts to a confiscation and destruction of the business of the appellant without due process of law.

The principal questions urged on review are: (1) whether the business of appellant as conducted comes within the operation of the Community Currency Exchange Act; (2) if within the technical wording of the act, whether it was so intended by the legislature; (3) whether the business of appellant, as operated, can be made subject to licensing or regulation. The reply of appellee to these points is that the case cannot be distinguished from *McDougall* v. *Lueder,* 389 Ill. 141, in which the constitutionality of the Community Currency Exchange Act was sustained, and hence that the injunction was authorized.

As applied to appellant the statute defines a Community Currency Exchange as "any person * * * engaged in the business or service of, and providing facilities for, cashing checks, * * *" (sec. 1.) The statute also requires that an application shall be made in writing, containing, among other things, the name and business address of the applicant, (sec. 4;) a bond for the benefit of any creditor of such community currency exchange, (sec. 5;) that the exchange shall not be carried on in any premises where the chief source of revenue is derived from the sale of alcoholic liquor, (sec. 8;) that only one place of business can be maintained under one license but that more than one license may be issued to the same licensee, (sec. 13;) and that applicant shall have a permanent address evidenced by a lease of at least six months' duration

as his place of business. (sec. 18.) There are other provisions which indicate that the business of conducting a currency exchange shall be at a business location in the community. While not so stated in the statute, the appellee claims the business must be wholly performed on the premises.

The business or appellant is not conducted at any particular address, nor is there any need of a lease on any premises. It is a mobile operation, and the checks are cashed on the premises of the employer issuing the checks. By its various provisions the act contemplates that the place licensed have a permanent office in the location, which it must control for a period of at least six months. There is no language in the act which applies to an armored mobile truck, except the words "cashing checks." These words might likewise be suitably applied to other similar business not classed as a currency exchange. The context of the statute assumes that the words "cashing checks," and other businesses enumerated by the statute, will be performed upon the premises licensed, and the words do not alone make it apply to a business which, under private contract, cashes checks of an employer upon his own premises.

The license includes authority to do more than cash checks. It includes facilities for cashing drafts, money orders, or other evidences of money, for a fee, or being in the business of selling or issuing money orders, or engaged in both of such businesses, or in performing one or more of such services. We believe the statute contemplates a permanent location, where the public may present a check for cashing, and perform the other business enumerated, for the benefit of a "community," *viz.*, for persons who live in one locality. We take judicial notice of the fact that Chicago, a large and populous city, contains within its environs many communities, and it is obvious that the act intended to allow different communities the benefits provided by the Community Currency Exchange Act by

authorizing one licensee to have several places of business. It would not be assumed by a reading of the act that it was intended to include an armored truck, loaded with money under contract with an employer for the purpose of paying its employees on its own premises, as being considered a community currency exchange. The only words compatible with such a construction are those pointed out above. Rendering the service of delivering cash for a payroll, under a contract with an employer, does not offend the main object for community service for the elemental reason that one plant only is served and not a community. But, when the act is considered as a whole, it adapts itself only to services or businesses providing facilities to the general public.

In the construction of a statute the law requires that it be given a reasonable interpretation. Under this rule, statutes are to be construed according to their intent and meaning, and a situation that is within the object, spirit, and meaning of the statute is regarded as within the statute, although not within the letter. And, conversely, a situation within the letter is not regarded as within the statute unless also within its object, spirit and meaning, and "Where the spirit and intention of the legislature in adopting the acts are clearly expressed and their objects and purposes are clearly set forth, the courts are not confined to the literal meaning of the words used, when to do so will defeat the obvious intention of the legislature and result in absurd consequences not contemplated by it." *Harding* v. *Albert,* 373 Ill. 94.

It has also been frequently held that where the language of the statute employed admits of two constructions, one of which makes the enactment absurd, if not mischievous, while the other renders it reasonable and wholesome, the construction which leads to an absurd result will be avoided. (*People ex rel. Prindable* v. *New York Central Railroad Co.* 397 Ill. 50; *In re Estate of Abell,* 395 Ill. 337; *City*

*of Elmhurst* v. *Buettgen,* 394 Ill. 248.) And it is also a canon of statutory construction that a law will be construed, if possible, in such a way as to render it constitutional if it can be done. *Great United Mutual Benefit Ass'n* v. *Palmer,* 358 Ill. 276; *Illinois Bell Telephone Co.* v. *Ames,* 364 Ill. 362; *Peoples Gas Light and Coke Co.* v. *Slattery,* 373 Ill. 31.

This leads us to a consideration of whether a statute could validly be enacted for the sole purpose of requiring mobile, armored cars to be licensed to furnish currency to an employer, by contract, to pay its help. It is a fundamental and well-established rule, both in the United States courts and in the courts of this State, as a firmly settled constitutional principle, that every citizen is guaranteed the right to engage in any lawful, useful and harmless business or trade, and it is not within the constitutional authority of the State legislature, in the exercise of police power, to interfere with the rights of the individual to carry on a legitimate business, where no interest of the public safety, welfare or morals is damaged or threatened. (*Scully* v. *Hallihan,* 365 Ill. 185; *People* v. *Carolene Products Co.* 345 Ill. 166; *Banghart* v. *Walsh,* 339 Ill. 132; *New State Ice Co.* v. *Liebmann,* 285 U.S. 262; *Weaver* v. *Palmer,* 270 U.S. 402.) Many more cases might be cited as sustaining this principle, but the foregoing are illustrations of the rule.

In the *Carolene Products Co. case* the defendant was charged with violating the provisions of the act prohibiting the sale of milk or milk products to which any fat or oil other than milk fat had been added. It was agreed that the product manufactured and sold was not harmful or deleterious to the public health in any way, and was a sanitary product. We held such an act was unconstitutional, saying: "The legislature has no authority to pronounce the performance of an innocent act criminal when the public health, safety, comfort or welfare is not inter-

fered with, (*Gillespie* v. *People*, 188 Ill. 176,) and may not, under the guise of protecting the public interests, arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. \* \* \* This court has by many decisions upheld the right of the citizen to engage in any occupation not detrimental to the public health, safety and welfare, free from regulation by the exercise of the police power. (*Banghart* v. *Walsh*, 339 Ill. 132; *Bessette* v. *People*, 193 id. 334; *Ruhstrat* v. *People*, 185 id. 133.)"

In *Scully* v. *Hallihan*, 365 Ill. 185, on the same ground, we held that the State had no power to license the occupation of a drain layer, and said: "His labor is his property, entitled to the full and equal protection of the law under the due process clause of the Federal constitution. It is also embraced within the constitutional provision guaranteeing to everyone liberty and the pursuit of happiness." The basic constitutional principle was laid down in *People* v. *Weiner*, 271 Ill. 74, where it is said: "Under the Federal and State constitutions the individual may pursue, without let or hindrance, all such callings or pursuits as are innocent in themselves and not injurious to the public. These are fundamental rights of every person living under this government and the legislature by its enactments cannot interfere with such rights."

The United States Supreme Court has adopted the same rule. In *New State Ice Co.* v. *Liebmann*, 285 U.S. 262, it held that an ice business was not intrinsically subject to the police power of the State, and hence a State law requiring an ice company to obtain a certificate of convenience and necessity from the Corporation Commission of the State was void, as infringing upon the right to do business. And, likewise, in an earlier case, *Weaver* v. *Palmer*, 270 U.S. 402, it was held that the use of shoddy in the making of comfortables was useful, convenient and

desirable to many, and hence not to be prohibited under the guise of a police power or measure.

We are strongly of the opinion that nothing has been alleged, or shown by the evidence, which renders the business of moving money to the premises of an employer by armored truck, and taking up the payroll checks of employees, of such a character as to adversely affect the public health, safety, morals or welfare. As a matter of fact the testimony shows it is highly useful and desirable. Nobody can possibly lose any money by the transaction except the armored service itself, as cash is paid to the owners of the checks upon the premises. Appellant does not handle any other type of checks, drafts, money orders, or evidences of indebtedness. He does not cash checks for anybody other than the employees of the employers with whom he has a contract. Appellant is entrusted with nobody's money. He makes himself a messenger to carry his own money from a bank and pay the employee in distant parts of the city. The appellee has not undertaken to show that any of the elements required by the exercise of the police power is present in the operations of appellant.

Under these well-settled principles, to construe the Community Currency Exchange Act as the sole basis for enjoining appellant's business would raise serious questions as to its validity. As is pointed out above, we should give such construction to a statute as will render it valid rather than invalid; and since we have likewise pointed out that the intent of the act is to furnish facilities to a community, and that those facilities be confined to a certain location, it does not seem the legislature contemplated including, within the provisions of the statute, mobile armored truck service.

There is another feature of the case which requires examination. Where, in any business, elements of harm, injury or detriment to public welfare or safety of the

public appear, requiring regulation for the public good, such elements of harm may be the proper ground for reasonable regulation, but they are not ground for a complete suppression and prohibition of the business, which in itself is innocent and harmless. An illustration of such principle will be found in *Adams* v. *Tanner*, 244 U.S. 590, where a State legislature prohibited the business of private employment agencies from receiving fees for their services. The Supreme Court held such a statute, prohibiting an entirely lawful and useful service, was in violation of the fourteenth amendment of the constitution, saying: "Because abuses may, and probably do, grow up in connection with this business is adequate reason for hedging it about by proper regulation. But this is not enough to justify destruction of one's right to follow a distinctively useful calling in an upright way." The same rule has been adhered to in *People* v. *Carolene Products Co.* 345 Ill. 166.

In the instant case, the only members of the general public with which the armored trucks have dealings are the employees of four hundred different concerns. None of the provisions of the present act appear to be for the purpose of protecting or safeguarding any interests of persons dealing through private contract, and it would appear to be precisely covered by what we said in *People* v. *Wilson*, 249 Ill. 195: "If it is claimed that the statute or ordinance is referable to the police power, the court must be able to see that it tends, in some degree, toward the prevention of offenses or the preservation of the public health, morals, safety or welfare. It must be apparent that some such end is the one actually intended and that there is some connection between the provisions of the law and such purpose. If it is manifest that the statute or ordinance has no such object, but, under the guise of a police regulation, is an invasion of the property rights of the individual, it is the duty of the court to declare it void."

These principles do not seem to be disputed or opposed

in the brief of appellee. Appellee places entire reliance upon what we held in *McDougall* v. *Lueder,* 389 Ill. 141. We do not think there is anything in the *Lueder case* which opposes what we have heretofore said in this case. The application of the statute in that case did not involve the operations of a mobile truck, under contract with an employer, to take up the checks of its employees. The constitutional question in the *Lueder case* was whether the legislature had the power to license and regulate local community currency exchanges. The opinion held that it did, and we adhere to what was said concerning such a purpose. In the present case the issue is whether the legislature intended to, and whether it had the power to, prohibit entirely mobile service offered by appellant as a matter of private contract between himself and the employer of workmen.

In the *Lueder case* the action was brought by private exchanges to enjoin the State Auditor from enforcing the Community Currency Exchange Act for licensing and regulating currency exchanges. Necessarily, that case involved institutions which were admittedly currency exchanges. The plaintiffs in that case contended that the entire act was unconstitutional, and that the legislature had no power whatever to regulate the matters contained in the act. In the present case it should be noted that appellant does not attempt to overthrow or challenge the power of the State to regulate currency exchanges, as defined in the act, as a business. What appellant does say is that the particular business enjoined by the court did not come within the provisions of the Currency Exchange Act; that the act was not contemplated to cover situations such as are presented in this case; and, further, that to construe the act as including the type of business in which appellant is engaged would render the act invalid; and therefore he points out to the court that it does no violation to the words of the act to exclude from its operation a person or corporation whose only business is to take up payroll

checks in different parts of the city of Chicago, under contract with an employer so to do; that to require a license for each place of delivery under such conditions would violate the right to engage in a lawful, harmless and useful business; and that even were there some evidence which required regulation, that to demand each armored unit should pay a license fee of $50 for each location in which payroll checks are cashed would be confiscatory and destructive of a useful business.

Inasmuch as we construe the statute as not to include within its provisions a type of business such as is conducted by appellant, the constitutional features of the general validity of the act are not involved, other than that if the judgment of the circuit court were affirmed it would be given an unconstitutional effect as to appellant.

For the reasons set out above, the decree of the circuit court of Cook County is reversed and the cause is remanded, with directions that the complaint be dismissed for want of equity.

*Reversed and remanded, with directions.*