(No. 32799.—

THILLENS, INC., Appellee, *vs.* ORVILLE E. HODGE, Auditor of Public Accounts, *et al.*, Appellants.

*Opinion filed January 20, 1954.*

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, of counsel,) for appellants Orville E. Hodge *et al.;* CHARLES H. THOMPSON, of Harrisburg, and C. WAYLAND BROOKS, and HIRSCH E. SOBLE, both of Chicago, for other appellants.

TENNEY, SHERMAN, BENTLEY & GUTHRIE, (HENRY F. TENNEY, KENNETH B. HAWKINS, and GEORGE B. ROGERS, of counsel,) and KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, (WEYMOUTH KIRKLAND, CARL S. LLOYD, DAVID JACKER, and GEORGE H. DAPPLES, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This is an appeal by both the Auditor and Attorney General of the State of Illinois and State's Attorney of Cook County, as original defendants, and by certain currency exchanges as intervening defendants, direct to this court from a declaratory judgment entered on the pleadings by the circuit court of Cook County adjudging that the Community Currency Exchange Act of 1943, as amended in 1951 by the Sixty-seventh General Assembly, (Ill. Rev. Stat. 1951, chap. 16½, par. 30,) was invalid and unconstitutional and therefore unenforcible as applied to the ambulatory check-cashing business of plaintiff. The constitutionality and validity of a State statute being the primary issue, the appeal properly comes direct to this court.

The verified complaint filed by plaintiffs prayed a declaratory judgment declaring the 1951 amendment to the Community Currency Exchange Act void and unconstitutional and that the defendant public officials and the individual defendant currency exchanges, as representative of all other currency exchanges, be enjoined temporarily and permanently from exercising any of the rights, powers, or duties conferred upon them respecting the enforcement of the amended act.

The facts alleged in the complaint may be briefly summarized as follows: Plaintiff is an Illinois corporation organized in 1949 for the purpose, among others, of engaging in the business of transporting currency and cashing payroll checks issued to employees of industrial and business concerns, only on the premises of employers issuing such checks, and only pursuant to contract between the company and the employer. The corporation succeeded to the assets and operation of the business previously conducted by the principal stockholder continuously and without interruption from August, 1934, to the date of filing the complaint. The plaintiff's sole business consists of

transporting currency belonging to the plaintiff to the premises of business establishments pursuant to contract and the cashing of payroll checks of employees on the premises of the employer. With the exception of two small similar businesses and isolated transactions conducted by Brink's, the plaintiff is the only owner and operator of a payroll check-cashing business in Cook County and the only such business of substantial size which will be materially and adversely affected by the amended act. The plaintiff owns and operates a fleet of 19 armored trucks. In most instances payroll checks are cashed at windows from within the armored trucks, parked on premises of the employer. In all cases where checks are otherwise cashed, the currency is transported by plaintiff's cashier, under the protection of armed guards provided by the plaintiff or the employer. The plaintiff does not engage in any other business nor cash anything other than payroll checks issued by an employer who has contracted for such services. Plaintiff's services are not available to the general public or to the community neighborhood. The plaintiff does not issue money orders, accept money for deposit or payment of utility bills, nor accept items for collection. All payroll checks are purchased outright by the plaintiff with its own funds. Its sole income is from a nominal service charge based on the size of the check cashed. Plaintiff cashes checks of more than 75,000 employees weekly, averaging in excess of $4,750,000 a week. During the year ending March 1, 1951, plaintiff cashed 3,874,194 checks in exchange for $234,877,000. Any loss which occurs is borne by the plaintiff and no loss can accrue to any others. A very substantial part of plaintiff's business is conducted in the industrial and outskirt areas where there is no practical or convenient means by which payroll checks can be cashed, except for plaintiff's services. The principal competitors of plaintiff's business are taverns. During the 17 years of operation by plaintiff and its predecessor, no per-

son had been injured or damaged as the result of any holdup or other criminal action directed at any of plaintiff's employees. The business of plaintiff and its value would be destroyed in the event of a suspension of its services for even a short period of time. The complaint alleges the 1951 amendment to the Community Currency Exchange Act to be unconstitutional, as a violation of section 2 of article II of the Illinois constitution, providing that no person shall be deprived of life, liberty, or property without due process of law, and that said amendatory act is an unreasonable, discriminatory and capricious exercise of the police power insofar as it relates to plaintiff's business.

The trial court entered a temporary injunctional order as prayed upon the verified complaint, from which the intervening defendants took an interlocutory appeal, the Appellate Court affirming said injunctional order in *Thillens, Inc.* v. *Cooper,* 345 Ill. App. 145.

Thereafter, defendants filed answers which, in addition to denying the unconstitutionality of the amendatory act and plaintiff's right to an injunction, specifically denied the following facts alleged in the complaint: that plaintiff's sole business consisted of the transporting of currency belonging to the plaintiff to premises of business establishments pursuant to contract and the cashing of payroll checks of employees on the premises of the employer; that any loss which occurs is borne by the plaintiff and can accrue to no others; that a very substantial part of plaintiff's business is conducted in industrial and outskirt areas where there is no practical or convenient means by which payroll checks can be cashed except for plaintiff's services; that the principal competitors of plaintiff's business are taverns; that during 17 years of operation no person was injured or damaged as the result of any holdup or other criminal action directed at any of plaintiff's employees; and that the business of plaintiff and its value would be

destroyed in the event of the suspension of its services, for even a short period of time. As to the remaining allegations of the complaint, the answer merely stated that defendants had no knowledge sufficient to form a belief as to the truth thereof. The answer was duly verified.

Thereafter, plaintiff filed its motion for judgment on the pleadings, alleging that the answers were substantially insufficient in law and that they tendered no issue of material fact because the amendatory act under consideration was, on its face, unconstitutional in its entirety. The trial court, after lengthy argument and due consideration, granted plaintiff's motion for judgment and entered the declaratory judgment appealed from, basing its decision primarily upon the opinion of this court rendered in the case of *People ex rel. Barrett* v. *Thillens*, 400 Ill. 224.

The errors of the trial court assigned as a basis for review may be summarized as follows: (a) that the trial court erred in sustaining the plaintiff's motion for judgment and in rendering declaratory judgment on the pleadings, thus depriving defendants of right to trial of the issues of fact raised by the pleadings. (b) that the 1951 amendatory act is a reasonable exercise of the police power and is not discriminatory, and that the trial court erred in declaring it unconstitutional and in enjoining its enforcement. (c) that the trial judge was without jurisdiction and the trial court erred in denying defendants' motion to vacate the injunction and to transfer the cause for reassignment to the chancery side.

The 1951 amendatory act amended the title of the original Community Currency Exchange Act to read "An act in relation to the definition, licensing, and regulation of community currency exchange and ambulatory currency exchanges, and the operators and employees thereof, and to make an appropriation therefor, and to provide penalties and remedies for the violation thereof."

Section .01 of the amendatory act contains a finding and declaration by the General Assembly in reference to ambulatory currency exchanges, as follows: "* * * that there has arisen also the ambulatory currency exchange business, as hereinafter defined in Section 1, which has engaged heretofore in unlicensed competition with the licensed community currency exchange business; that it is in the public interest to promote and foster the community currency exchange business and to assure the financial stability thereof; that the operations of the ambulatory currency exchange business have enabled it to appropriate the most profitable function of the community currency exchange business without incurring the expenses of, or subjecting itself to the regulations imposed upon the community currency exchange business, and to secure thereby an unfair advantage; that there has resulted therefrom an unfair and ruinous competition to the licensed community currency exchange business; that the nature of the ambulatory currency exchange business is such as to render it hazardous and dangerous to the public safety and security; that the public welfare demands that no ambulatory currency exchange business should be operated without a license, or otherwise than in accordance with the regulations provided in, or to be provided pursuant to this Act." Ill. Rev. Stat. 1951, chap. 16½, par. 30; Jones Ann. Stat. 10.69(99).

Section 1 of the amendatory act defines a community currency exchange as meaning "Any person * * * engaged at a fixed and permanent place of business, in the business or service of, and providing facilities for, cashing checks, * * *" and defines an ambulatory currency exchange as meaning "Any person * * * engaged in performing any one or more of the foregoing services, at any location other than that of a fixed and permanent place of business of his, their or its own." Section 1 also exempts

from the operation of the act any party engaged primarily in a business of transporting for hire bullion, currency, securities, negotiable or non-negotiable articles, jewels, or other property of great monetary value, and who, in the course of such business and only as an incident thereto, cashes checks, or other evidences of money directly for, or for the employees of and with the funds of and at a cost only to, the person or firm for whom the party is then actually transporting such property, pursuant to a written contract for such transportation, and all incidents thereto. It also exempts any party engaged in the business of selling tangible personal property at retail who, in the course of such business, and only as an incident thereto, cashes checks or other evidences of money. Section 2 of the amendatory act provides that no community currency exchanges or ambulatory currency exchange shall engage in business without a license from the Auditor of Public Accounts; that no licenses shall issue for the conduct of an ambulatory currency exchange on any public street or highway; that an ambulatory currency exchange shall secure a license for the conduct of its business at each and every location served by it as provided in section 4; and that violators of said section shall suffer certain prescribed penalties. Section 3 of the act provides what operations a community or ambulatory currency exchange may or may not engage in. Section 4 provides for written applications for licenses and certain information relative to the applicant's history; that applications by both types of exchanges for a license shall be accompanied by an investigation fee of $25 for the cost of investigating the applicant; that an annual license fee of $50 shall be paid by a community currency exchange; that an ambulatory currency exchange shall pay an annual license fee of $10 for each and every location served by it; that an approved applicant shall not be required to pay the initial investigation fee of $25 more than once; and that with respect to each location the

applicant should file with the Auditor a letter or memorandum under oath, signed by the owners or authorized representative of the place of business where service is to be rendered, containing statement that such service is desired and that the person signing the same is authorized so to do. Section 10 specifies certain qualifying conditions precedent to the issuance of a license and provides that no application shall be denied by the Auditor without notice and hearing and a right of review in accordance with section 22.01 of the act. Section 14 provides for the payment of annual license fees and filing of annual reports, bonds, and insurance policies as and if required by the act, on or before November 15 annually. Section 15 provides that no license shall be revoked by the Auditor without notice and hearing and right of review in accordance with section 22.01. Section 16 provides for annual reports to the Auditor and requires that the Auditor shall at least once a year inspect the location served by an ambulatory currency exchange for the purpose of determining whether such exchange is complying with the provisions of the act at each location served, and provides for *subpoena* powers of Auditor and examination fees thereby, with a maximum fee of $20 per day. Section 19.1 requires an ambulatory currency exchange, actively engaged at any place or station, on a location licensed under the act, in the cashing of checks other than from within an armored vehicle, to provide at least one armed guard at each such place, in addition to the person cashing checks. Section 19.2 requires that before any license or renewal of license is issued for any location served by an ambulatory currency exchange, such applicant shall file a surety bond in the penal sum of $2000, conditioned that the licensee serving the location shall comply with section 19.1 of the act and shall pay all lawful claims for money or other property loss or bodily injury suffered in the course and by reason of a holdup at such location that shall occur at the time

or times when such licensee failed to comply with said section 19.1, said bond to run to the Auditor for the benefit of any person or persons who establish a lawful claim or claims as aforesaid. The applicant is given an option to file annually, in lieu of separate bonds for each location, a blanket bond of not to exceed $100,000 on the same conditions. Section 28 provides that if an ambulatory currency exchange does not engage in selling or issuing money orders in its own name, then sections 5, 6, and 7 of the act are not applicable to it. Section 29 declares the operation of any unlicensed exchange or the unlawful conduct of any licensed exchange to constitute unfair competition with licensed and legally operated currency exchanges doing business in the same community, and authorizes such licensed and legally operated currency exchanges doing business in the same community to apply for and obtain an injunction restraining such unfair competition. Section 30 of the act provides that if any provision of the act is declared unconstitutional, the unconstitutionality of such provision shall not invalidate the constitutional provisions of the act.

In the case of *People ex rel. Barrett* v. *Thillens,* 400 Ill. 224, the defendant Thillens appealed from an injunction restraining the operation of his business on the ground that it violated the provisions of the Community Currency Exchange Act as it existed prior to the 1951 amendment thereto. (Ill. Rev. Stat. 1947, chap. 16½, pars. 31-56.) The nature of the defendant's business in that case was identical to that of the plaintiff's business in this case as alleged in the complaint. This court there held that the business of Thillens in conducting an ambulatory currency exchange did not come within the terms or intent of the Community Currency Exchange Act as originally adopted and, further, that the ambulatory currency exchange business as operated by Thillens could not be constitutionally subjected to licensing or regulation. In reaching the latter conclusion, this court first noted that it is a fundamental

and well-established rule, both in the United States courts and in the courts of this State, as a firmly settled constitutional principle, that every citizen is guaranteed the right to engage in any lawful, useful, and harmless business or trade, and it is not within the constitutional authority of the State legislature in the exercise of police power to interfere with the rights of the individual to carry on a legitimate business where no interest of the public safety, welfare, or morals is damaged or threatened. (*People* v. *Thillens*, 400 Ill. 224, at page 232.) In that case nothing was alleged or shown by the evidence which rendered the business of moving money to the premises of an employer by armored truck, and taking up the payroll checks of employees, of such a character as to adversely affect the public health, safety, morals or welfare, and the appellee in that case did not undertake to show that any of the elements required for the exercise of the police power were present in the operation of Thillens' business. Under the undisputed and uncontested facts which existed in the case of *People* v. *Thillens*, 400 Ill. 224, there is no question as to the correctness of this court's holding under those circumstances.

However, the present case involves an amendment to such original Community Currency Exchange Act, expressly bringing the ambulatory currency exchange within the terms and coverage of such act after an express finding of fact by the General Assembly. As heretofore noted, such finding of fact by the General Assembly was to the effect that ambulatory currency exchange business was hazardous and dangerous to the public safety and security, in that it offered unfair and ruinous competition to licensed community currency exchange business and endangered the public safety. Although the complaint alleged facts which, if true, would make the decision of *People* v. *Thillens*, 400 Ill. 224, controlling, yet very material allegations of fact in the complaint were specifically denied by the

answer. Such denials went quite specifically and directly to the nature of plaintiff's business, the identity of persons who would bear the losses, if any, which occurred in plaintiff's business, the nature of the principal competitors of plaintiff, and whether or not any persons have ever been injured or damaged incident to the operation of plaintiff's business as a result of criminal actions. The difference in the legislative acts under consideration, the existence of a finding of fact, and the existence of disputed issues of fact operate to distinguish this case from that of *People* v. *Thillens* and prevent the decision of this court in *People* v. *Thillens* from controlling the decision in this case at the present time.

It is well established that a legislative determination that regulations are needful is not conclusive nor unlimited, and in order to be imposed they must bear some definite and substantial relation to the public health, safety, morals, or welfare. (*Zadworny* v. *City of Chicago*, 380 Ill. 470; *Klein* v. *Department of Registration*, 412 Ill. 75; *Midland Electric Coal Corp.* v. *County of Knox*, 1 Ill. 2d 200.) At the same time, it is a question for legislative determination whether or not an evil exists and what means should be adopted to prevent it, and its acts will not be interfered with unless they are clearly in violation of some constitutional limitation. (*Stewart* v. *Brady*, 300 Ill. 425.) Where the reasonableness of the legislation is fairly debatable, the courts will not interfere with the legislative judgment, and will not substitute their judgment for that of the legislative department. But that does not foreclose the courts from exercising their judicial function, and the reasonableness and propriety of regulation and its application must be decided by the court from the facts and circumstances in evidence. (*Midland Electric Coal Corp.* v. *County of Knox*, 1 Ill. 2d, 200.) Also, the party attacking the validity of a statute has the burden of proving that it is clearly arbitrary and has no foundation in the police

power for its existence. (*Midland Electric Coal Corp.* v. *County of Knox*, 1 Ill. 2d, 200; *Village of Western Springs* v. *Bernhagen,* 326 Ill. 100.) Where there is room for legitimate difference, the courts will not investigate the facts for the purpose of determining whether the declaration was warranted by the facts (*Gadlin* v. *Auditor of Public Accounts,* 414 Ill. 89,) and all presumptions are in favor of the constitutionality of the legislation once it becomes the law of the State, and all reasonable doubts must be resolved in its favor. *Gadlin* v. *Auditor of Public Accounts,* 414 Ill. 89.

The motion for judgment in this case was equivalent to a demurrer to the answer, which answer set up definite issues of fact. The pleadings presented to the court for determination the ultimate question whether or not the 1951 amendment to the Currency Exchange Act was a valid exercise by the State Legislature of the police power. In determining the answer to that question, the court must ascertain whether or not the legislation bears a real and substantial relation to the public health, safety, morals, or general welfare. Although the court must give due weight to the legislative finding of fact that the public safety and security requires such legislation, such legislative finding is not conclusive and the court must exercise its judicial function and make its determination of the basic question from the facts and circumstances of the case. The complaint and answer put in issue facts and circumstances which bear directly upon the extent to which the public safety and security is related to the conduct of ambulatory currency exchanges. The trial court was in error in entering judgment on plaintiff's motion, but should have required the introduction of evidence in order to resolve the factual issues before deciding the legal questions presented.

The argument by appellees that the trial court was without jurisdiction and should have transferred the cause to the chancery side was adequately and correctly answered

by the Appellate Court in its decision on the appeal from the temporary injunctional order in the case of *Thillens, Inc.* v. *Cooper,* 345 Ill. App. 145, and the Appellate Court's conclusion that the trial court had jurisdiction is adopted by this court without any further detailed discussion thereof.

For the foregoing reasons, the judgment of the trial court is reversed and the cause remanded, with directions to overrule the plaintiff's motion for judgment on the pleadings, and to take such other action as is appropriate to resolve the issues presented by the pleadings.

*Reversed and remanded, with directions.*