LOU OWEN, INC., d/b/a Toto's and 1450 East, Plaintiff-Appellee, v. THE VILLAGE OF SCHAUMBURG, Defendant-Appellant.

First District (6th Division)    No. 1—95—0157

Opinion filed April 26, 1996.

Jack M. Siegel, of Altheimer & Gray, of Chicago, for appellant.

David W. McArdle and E. Regan Daniels Shepley, both of Zukowski, Rogers, Flood & McArdle, of Crystal Lake, for appellee.

JUSTICE EGAN delivered the opinion of the court:

The defendant, Village of Schaumburg, appeals from an order preliminarily enjoining enforcement of a municipal ordinance which bans certain types of entertainment geared toward teenagers.

The plaintiff, Lou Owen, Inc., operates a restaurant, nightclub and ballroom called "1450 East," located within the municipal boundaries of the defendant. Since 1990, the plaintiff has also operated an entirely separate teenage dance club, called Toto's, on the second floor of the 1450 East building. In 1990 the defendant enacted an ordinance which provided that a class D entertainment license could be issued on a daily basis which would entitle the holder of the license to provide entertainment including dances or concerts "wherein the patrons are between the ages of 14 to 20 years." Schaumburg, Ill., Village Code § 113.02(D) (October 9, 1990). The hours of the class D license were to last no later than one-half hour before curfew unless the event was limited to persons above the age of 17.

In 1992 the ordinance was amended and provided that the application for a class D license was required to show, among other things, the number of employees and performers to be used for the event; a security plan, and the type of advertising to be used. The license limited the number of tickets to be sold to the capacity of the premises. It also required automatic counters to be used in determining the occupancy of the building; and the parking lot was to be closed when the occupancy limit of the premises was reached.

The license application must have been first approved by the chief of police and subsequently by the village manager. (According to the defendant, the granting or denial of the license was subject only to the discretion of the chief and manager. The ordinance contains no guidelines for the exercise of the discretion.) No class D license was required for a "not-for-profit or charitable group duly licensed and registered with the State and having a five-year history in the village." Also exempted were units of local government, schools, park districts or "other similar type of governmental agency." Schaumburg, Ill., Village Code § 113.02(D) (amended April 28, 1992).

Toto's sponsored well over 400 dances limited to young people ages 17 to 20 pursuant to the existing ordinance between 1990 and 1994. Toto's also hosted a number of private events with teenage guest lists, such as bar and bat mitzvahs, quincineras (Hispanic coming-of-age celebrations) and dances sponsored by not-for-profit groups, such as a drug awareness program and the American Cancer Society. Toto's is the only place in Schaumburg which regularly offers teen dances and concerts.

Toto's had made advance arrangements with the Schaumburg police department for a scheduled police detail consisting of officers who were paid by Toto's. On November 4, 1994, two of the Schaumburg police officers failed to show up as scheduled. Kevin Toma, a 15-

year-old, had come to Toto's with a brother of one of the security officers. He was not a patron of Toto's. While he was using a public phone inside Toto's to call his mother, the security guards at Toto's refused entry to three individuals when the guards noted the smell of alcohol on the breath of one of the individuals. The three individuals drove away. After Kevin Toma left the building, he was fatally shot by one of the group of three young men who had been denied admittance. The man had apparently fired the shot indiscriminately while concealed at a point some distance from Toto's front door.

On November 5, the defendant's village manager announced that the police detail failed to appear at Toto's due to a department error but that he had "suspended" Toto's licenses for teen shows. The village president called for a ban on "commercial" teenage dances.

On November 7, the village manager informed Greg Owen, the general manager of Toto's, that the temporary suspension of a request for teenage dances would remain until further notice by the village manager. On November 8, the village board voted to ban "commercial" teen dances and concerts and directed the village attorney to draft an ordinance in accordance with the board's action.

On November 15, 1994, the village board enacted ordinance No. 94—179, (the Ordinance), which states:

> "It shall be unlawful for any person, firm, or corporation to offer, provide, procure, make available, allow, suffer or permit entertainment of the following nature, but not limited to: dances, concerts or other activities wherein the patrons are between the ages of 14 through 20 years, or such other similar form of temporary, special events of an entertaining nature; provided, however, that such activities may be permitted for a not-for-profit or charitable group, duly licensed and registered with the State and having a five-year history in the village, a church, unit of local government, school, park district or other similar type of governmental agency. No such entertainment shall be offered to persons between the ages of 14 through 20 years on premises for which a liquor license has been issued, except for hotels which have ballrooms available separate and apart from any facilities for the dispensing of liquor." Schaumburg, Ill., Village Code § 113.36 (aff. November 15, 1994).

Because Toto's is in a building which has another facility with a liquor license, Toto's is barred from having any teenage dances or concerts.

After the defendant enacted the Ordinance, the plaintiff filed a complaint which sought a declaratory judgment that (1) the enactment of the Ordinance did not affect vested rights acquired by virtue of the passage in 1992 of the previous licensing scheme; and (2) the

Ordinance was facially invalid under the equal protection clauses of both the fourteenth amendment to the United States Constitution and article I, section 2, of the Illinois Constitution. The plaintiff claimed that the Ordinance created an unreasonable classification by distinguishing between hotels and Toto's and that its proscription against commercial entertainment for teens was arbitrary and unrelated to the purpose of the Ordinance. The plaintiff also filed a petition for a preliminary injunction.

The trial judge conducted a hearing on the petition for preliminary injunction at which the plaintiff presented numerous witnesses, including Greg Owen, who testified to the manner in which Toto's conducted its events; to the plaintiff's financial condition, including renovation expenditures; the physical layout of Toto's; the history of Toto's teen dance nights; security provisions; and the financial loss suffered by Toto's as a result of the ban on teenage dances. The remaining witnesses, including a police officer, a firefighter, a Toto's patron, and the Schaumburg village president, testified to Toto's historically safe operation and its security provisions.

The defendant presented two witnesses: Captain Clifford Johnson of the Schaumburg police department and George Longemeyer, the Schaumburg village manager. Captain Johnson testified to various incident reports which had been filed in conjunction with Toto's teen nights. Longemeyer testified to the history of the defendant's licensing provisions for teen entertainment, as well as Toto's compliance with them. Longemeyer also expressed his opinions regarding the differences between a commercial dance held at Toto's and not-for-profit events located in hotels.

At the conclusion of the hearing, the judge made certain findings which included the following remark:

> "One reading the ordinance has difficulty in determining whether the purpose of the ordinance is to prohibit teenage dances in their entirety, or is the intent to prohibit the teenage dances in only certain places, or thirdly to prohibit teenage dances except when they are conducted under the auspices of certain delineated groups."

The judge said that the evidence "relative to the conduct of Toto's *** was [not] in all respects relevant to an ultimate determination as to the constitutionality [of] this ordinance." He concluded that the Ordinance did not "satisfy the strictures of equal protection and reasonable relationship to an intended purpose." He concluded that he would enter a permanent injunction against enforcement of the Ordinance. His later written order, however, was for a preliminary injunction after it was pointed out that the petition was for a preliminary injunction.

■ The defendant's appeal is principally based on the claim that the judge erred in holding the Ordinance unconstitutional. Before we address the constitutionality of the Ordinance, however, some arguments raised by the parties should be addressed preliminarily. The first is the defendant's argument that constitutional questions may not be considered in actions seeking a preliminary injunction. We disagree. We have previously refused to accept the claim that constitutional questions may never be decided on a motion for a preliminary injunction. *Continental Cablevision of Cook County, Inc. v. Miller*, 238 Ill. App. 3d 774, 606 N.E.2d 587 (1992); see also *Chicago Health Clubs, Inc. v. Picur*, 124 Ill. 2d 1, 528 N.E.2d 978 (1988) (affirming grant of preliminary injunction in which the trial judge ruled ordinance unconstitutional). The defendant cites two cases in support of its argument. One of them, *Clark v. Village of Willow Springs*, 30 Ill. App. 3d 1020, 332 N.E.2d 425 (1975), is an abstract opinion, a copy of which has not been provided to us by the defendant; the other is *Knuppel v. Adams*, 12 Ill. App. 3d 708, 298 N.E.2d 767 (1973), in which the appellate court held that it would not consider the constitutionality of a statute in an injunction proceeding *when the plaintiff would not be harmed by operation of the statute*. In addition, the defendant did not raise this argument in the trial court. Instead, it submitted evidence and argued extensively in support of its claim that the ordinance was constitutional.

■ One of the bases of the plaintiff's claim is that it acquired a vested right to operate because of expenditures it made in reliance on the previous licensing ordinance. We agree with the defendant that the plaintiff has no vested right to a continuance of a license ordinance. See *David E. Shelton Productions, Inc. v. City of Chicago*, 167 Ill. App. 3d 54, 520 N.E.2d 1073 (1988); *Sagittarius, Inc. v. Village of Arlington Heights*, 90 Ill. App. 3d 401, 413 N.E.2d 90 (1980). The judge did not pass on this claim, but the plaintiff seeks affirmance on that basis. We disagree with the plaintiff.

The next issue raised requires our determination of what precisely the Ordinance bans. We agree with the trial judge that the Ordinance is not as clear as it could have been in expressing exactly what is prohibited. One interpretation mentioned by the judge was that the Ordinance barred *all* dances for certain teenagers, except those held in hotels. This interpretation would bar even dances in private homes. We avoid that interpretation only by accepting the definition of the word "patron," as "a regular customer." Black's Law Dictionary 1127 (6th ed. 1990). That definition creates the *inference* that the defendant's legislative body was referring to a commercial operation.

There is some question about the plaintiff's position. The defendant construes the plaintiff's argument to be that the Ordinance permits commercial dances at hotels. The defendant disagrees and maintains that the Ordinance is a blanket prohibition of only commercial dances without exception; that teenage dances may be held if conducted by certain charitable groups preapproved by the defendant; and that even the preapproved charitable groups may not conduct dances on premises that have a liquor license; but the preapproved charitable groups may conduct dances in hotels which have a liquor license, provided that the liquor is sold in an area separate from the ballroom where the dances are held. We agree that the defendant's interpretation is not unreasonable, but we confess that it required our parsing and reparsing the Ordinance to recognize the interpretation. Under the Ordinance, therefore, Toto's may not conduct any dances or concerts where any of the patrons are between the ages of 14 and 20.

We note that under the Ordinance, like the previous ordinance, no license is required for dances conducted by certain not-for-profit organizations. Thus, any dance or concert conducted by a preapproved charitable organization for teenagers does not require any submission to the defendant of a security plan, inspection by fire department personnel or automatic counters in the parking lot. There are also no time limitations based on the curfew for children between 14 and 16 that were contained in the previous ordinance.

The last issue is the degree to which the evidence presented by the parties should be considered by this court. This case has been presented to us in a confusing manner. Both sides introduced evidence. At the close of the hearing, the judge said that *some* of the evidence was not relevant to the issue of constitutionality and found that the Ordinance was unconstitutional on its face. It is not clear to us that he did not find it unconstitutional based on the evidence.

The defendant's opening brief repeated in considerable detail the evidence that was heard. The plaintiff added certain facts in its brief. Both sides argue in this court, as they did in the trial court, the weight of the evidence. In its reply brief, the defendant tells us that it described the evidence "at length in its opening brief in an effort to fully present to this court what went on below." The defendant's reply brief cautions that "what is at issue here is the alleged facial invalidity of the ordinance." In other words, the defendant implies

that we should ignore the evidence. We are not convinced that we may not, or should not, consider all the evidence.[1]

In the case cited by the defendant, *Northwestern University v. City of Evanston*, 74 Ill. 2d 80, 383 N.E.2d 964 (1978), the defendants alleged that the plaintiff was barred from maintaining its action because it had not exhausted its administrative remedies. The plaintiff answered that it was not required to exhaust its administrative remedies because it was alleging that an ordinance was unconstitutional on its face. The supreme court held that the mere allegation that an ordinance is unconstitutional on its face does not "thereby avoid the exhaustion requirement." In explanation the supreme court said this:

> "In order to come within this exception, a plaintiff must point to language in the ordinance which, *without more*, reasonably can be said to violate a specific constitutional guarantee. Northwestern claims that this zoning ordinance is unconstitutional on its face because it permits the university to maintain athletic facilities but prohibits it from using those facilities for professional sports or other commercial purposes. The university asserts that this distinction is inherently arbitrary because it can have no possible relation to an impact on the surrounding neighborhood. *That proposition, however, is not self-evident.* On the surface, at least, there would appear to be substantial differences between the impact of a predictable number of intramural or intercollegiate athletic events and an unpredictable number of commercial athletic events. *Whether other aspects of the differing impact of commercial versus noncommercial uses are significant would require proof above and beyond the circumscribed bounds of surface unconstitutionality.*" (Emphasis added.) *Northwestern*, 74 Ill. 2d at 87.

It is not "self-evident" to us that the defendant's distinction between commercial and noncommercial uses is "inherently arbitrary because it can have no possible relation to an impact" on the Village of Schaumburg. For that reason, we conclude that if we were restricted in this appeal to deciding only the question of facial invalidity, we would be required to reverse the judgment and remand the case for further proceedings. The plaintiff would then certainly be permitted to amend its complaint.

The trial judge's precise findings are not clear beyond the fact that he found the Ordinance to be unconstitutional on its face. It is

---

[1]We construe certain remarks of the defendant's attorney during oral argument to be a concession that we should consider the evidence. We do not, however, base our decision to consider the evidence on that concession.

fairly arguable that he considered some of the evidence and also held that the Ordinance was arbitrary and capricious and did not have a rational relationship to a legitimate governmental interest. See *Krebs v. Thompson*, 387 Ill. 471, 56 N.E.2d 761 (1944).

All the underlying questions of the constitutionality of the Ordinance will not go away. At some time, either in this case or some other case, the issue must be decided. For the sake of judicial economy, therefore, and to resolve the question, we will determine, based on the evidence presented, whether the record establishes that the Ordinance was arbitrary and capricious and did not have a rational relationship to a legitimate governmental interest. *Cf. Thillens, Inc. v. Hodge*, 2 Ill. 2d 45, 116 N.E.2d 886 (1954) (the supreme court held that the trial court erred in deciding a constitutional attack on a statute *without* an evidentiary hearing).

Our next task is to determine what the remaining issues are. They are: (1) whether an ordinance which prohibits teenage dances which are held or conducted by a for-profit organization, while permitting teenage dances which are held or conducted by a not-for-profit organization, is an unreasonable classification under the constitution; and (2) whether an ordinance may bar teenage dances held or conducted even by a not-for-profit organization unless the dances are held in hotels.

██ ■ The principles that govern review of orders granting or denying preliminary injunctions and rulings on the constitutionality of an ordinance are uncomplicated and easily stated. The granting of a preliminary injunction is within the discretion of the trial court. *Regional Transportation Authority v. Burlington Northern Inc.*, 100 Ill. App. 3d 779, 426 N.E.2d 1143 (1981). A reviewing court must restrict itself to a determination of whether the trial court abused its broad discretionary powers. *Wessel Co. v. Busa*, 28 Ill. App. 3d 686, 329 N.E.2d 414 (1975). An abuse of discretion is present when the judge's decision is against the manifest weight of the evidence. *Jefco Laboratories, Inc. v. Carroo*, 136 Ill. App. 3d 793, 483 N.E.2d 999 (1985).

■ A municipality has the power to restrict or prohibit the exercise of a legitimate trade where it is necessary for the protection of the public health, morals, safety or welfare. *Figura v. Cummins*, 4 Ill. 2d 44, 122 N.E.2d 162 (1954). Where, however, a prohibitory ordinance embraces activities or businesses having no effect upon the relevant object of the police power, it cannot be sustained. *Pacesetter Homes, Inc. v. Village of South Holland*, 18 Ill. 2d 247, 163 N.E.2d 464 (1959). Legislation enacted to protect and promote the general welfare is presumed to be a valid exercise of the police power. A

party attacking the validity of an ordinance has the burden of proving that it is clearly arbitrary and has no foundation in the police power for its existence. *Midland Electric Coal Corp. v. County of Knox*, 1 Ill. 2d 200, 115 N.E.2d 275 (1953). The presumption of validity is rebuttable and, when an attack is made upon the validity of an ordinance, it is the duty of the court to review it; and the application of the ordinance must be decided by the court from the facts and circumstances in evidence. *Thillens, Inc. v. Hodge*, 2 Ill. 2d 45, 116 N.E.2d 886 (1954).

■ Our review of the "facts and circumstances" that were presented to the trial judge leads us to the conclusion that his finding that the Ordinance was arbitrary and capricious and did not have a *rational relationship* to a legitimate governmental interest was not against the manifest weight of the evidence and thus was not an abuse of discretion.

Daniel Sampilla, a lieutenant with the Chicago police department and a gang-crime specialist, had been hired by Toto's to analyze the security problems that might arise and to make recommendations. In his opinion, teenage dances at hotels were much more difficult to secure and to provide a safe, controlled environment. He did not think that teenage dances conducted for the benefit of not-for-profit organization were any safer than those conducted by organizations such as Toto's. He said there was a gang problem in the Chicagoland area in general and in the northwest suburbs. The defendant's village manager conceded this. The persons who attend dances in Schaumburg come from all over Chicago, Schaumburg, Rolling Meadows, Libertyville, and Wisconsin and Indiana.

Greg Owen testified that he had never had an occurrence where people were drinking inside Toto's for a teenage event. Before the Toma shooting, there had never been any incident involving weapons. No altercations went beyond two or three people involved, and they were always handled by the security personnel present. None of the altercations resulted in Schaumburg taking any adverse action with regard to Toto's entertainment license.

Sampilla said that it was more difficult to control the environment of hotels because hotels have numerous entrances and exits and they have other amenities such as bars, restaurants and upper floors that teenagers can go to. Hotels have adults that will rent out rooms for the teenagers, and the teenagers will sneak up to the rooms and have alcohol in the rooms. Sampilla has experienced all of these problems at hotels working at different functions. Toto's has only one entrance and one exit and is consistently run at the same secure level. In his opinion Toto's does not require gang officers as security.

The defendant introduced 14 incident reports involving Toto's covering the period between 1992 and enactment of the Ordinance. Captain Cliff Johnson testified that the security personnel or Schaumburg police never had any problems handling any of the incidents he reviewed, with the exception of the Toma shooting. He agreed that the fact that dances may be run by a charitable institution having a five-year history with the defendant does not necessarily make it any safer if they are in a hotel. He testified that not-for-profit entities conducting teenage dances in Schaumburg may have teens coming from outside Schaumburg. He also testified that, based on his experience, teenagers at hotel events have the opportunity to leave the dance in the banquet room and go to a bar where alcohol is served and order a drink. He was not aware of any evidence or statistics indicating that it is safer to conduct teen dances in hotels as opposed to Toto's or anywhere else.

The village manager testified that in his opinion commercial dances draw from a larger area than noncommercial dances and tend to bring in elements of society creating gang problems. He was not aware of any statistics or evidence supporting this opinion. Between 1992 and the enactment of the Ordinance, 213 events were conducted at Toto's. Each event averaged 650 teenagers. All of the reported incidents were minor. Only one of the reports involved a fight. None of the reports involved gang activity.

We will first consider whether the evidence supports the finding that the defendant had not established justification in distinguishing between hotels and all other places in conducting not-for-profit teenage dances. In the trial court the only distinction made between Toto's and hotels was that hotels contain rooms for sleeping. We agree with the trial judge's finding that this was not a rational basis for distinguishing between hotels and Toto's, particularly when we consider the evidence establishing the lack of security at hotels and the security at Toto's. We note that the 1992 amendment was triggered by a "riot" in the parking lot of the Marriot Hotel in Schaumburg. Over 3,000 teenagers were involved. As a result of that occurrence, the 1992 ordinance was enacted imposing certain restrictions on organizations such as the Marriot Hotel, including limits on the persons using the parking lot. We find it ironic that, under the 1994 ordinance, the Marriot Hotel may now book dances for teenagers without any of the restrictions of the 1992 ordinance if the dances are conducted by a not-for-profit organization. We do not find at all persuasive the defendant's argument that Toto's provides too much security.

The defendant maintains that the goal of the Ordinance is to

prevent the kind of disturbance that occurred at the Toma shooting and to stem the tide of gang activities in the suburbs. No one can argue that these are not laudable aims. But beyond telling us as a rubric of constitutional law that distinctions between noncommercial and commercial activities may be made and that the defendant legislature sought to avoid proliferation of gang activity and violence as exhibited at the Toma shooting, the defendant has provided a paucity of evidence to show a reason for distinguishing between commercial and noncommercial activities and hotels and Toto's. To illustrate, there was no evidence that the shooting of Toma was gang-related. The only evidence of gang activity was testimony from the village manager that the police "suspected" that a gang was involved. We note also that gang membership is not restricted to teenagers.

On the entire issue of commercial versus noncommercial sponsorship, the judge heard conflicting opinions, and it was his province to accept one opinion and reject the other. The judge could have properly concluded that the reasons advanced by the defendant were pretextual and that the principal purpose of the Ordinance was to put Toto's out of the business of conducting teenage dances or concerts.

The defendant has cited *Union Cemetery Ass'n v. Cooper*, 414 Ill. 23, 110 N.E.2d 239 (1953), *People v. Commercial Life Insurance Co.*, 247 Ill. 92, 93 N.E. 90 (1910), and *Earnhart v. Director of the Department of Revenue*, 191 Ill. App. 3d 613, 548 N.E.2d 81 (1989). In *Union Cemetery*, the supreme court enunciated in considerable detail the distinctions between for-profit and not-for-profit cemeteries. Similarly, the supreme court enunciated the distinctions between the goals of an insurance company and a mutual benefit society in *Commercial Life Insurance*. In *Earnhart*, the appellate court, in upholding the Charitable Games Act, noted the reasons why the legislature made a distinction between charities and for-profit organizations in operating gambling activities. Factually, those cases are far from the mark in this case.

Another case cited by the defendant is *City of Dallas v. Stanglin*, 490 U.S. 19, 104 L. Ed. 2d 18, 109 S. Ct. 1591 (1989). In that case the Supreme Court upheld an ordinance of the City of Dallas that provided for licensing of dances restricted to admission of persons between the ages of 14 and 18. The owner of a dance hall filed a suit to enjoin enforcement of the ordinance. The *owner* maintained that the rights of *minors* to associate with adults were infringed. (No one questioned the owner's standing.) We do not see the applicability of that case to the case before us. No one maintains that the defendant may not distinguish between dances conducted for teenagers and dances conducted for adults.

We conclude with this observation of the supreme court in *City of Mt. Vernon v. Julian*, 369 Ill. 447, 454, 17 N.E.2d 52 (1938):

> "[L]iberty, as that term is used in the constitution, *** is deemed to embrace the right of every man to be free in the use of his powers, faculties and property and to adopt and pursue and employ these things in such lawful way as he may choose, subject only to such restraints as are necessary to secure the common welfare."

In short, we conclude that the trial judge's implicit finding that the restraints imposed by the Ordinance were not necessary to secure the common welfare was not against the manifest weight of the evidence and that he did not abuse his discretion in granting a preliminary injunction.

For these reasons, the judgment of the circuit court is affirmed and the cause is remanded.

Judgment affirmed and remanded.

McNAMARA and RAKOWSKI, JJ., concur.