(No. 23773.— ▮▮▮▮▮▮▮▮▮▮▮)

Angelo Scully *et al.* Appellants, *vs.* John J. Hallihan, Director of the Department of Registration and Education, Appellee.

*Opinion filed December 10, 1936—Rehearing denied Feb. 4, 1937.*

George J. Haddad, and Joseph B. Santucci, for appellants.

Otto Kerner, Attorney General, (John E. Cassidy, and Jerome F. Dixon, of counsel,) for appellee.

Mr. CHIEF JUSTICE HERRICK delivered the opinion of the court:

The circuit court of Cook county sustained the defendant's motion to strike (in the nature of a demurrer) the amended complaint filed May 12, 1936, by the plaintiffs Scully, Scalzitti, Centrocchio and DelMonaco, against John J. Hallihan, as director of the Department of Education and Registration, to enjoin the enforcement against them of the act in relation to the regulation of plumbing, hereinafter called the "act of 1935." (State Bar Stat. 1935, chap. 109a, p. 2425-2431.) The plaintiffs abided. Their amended complaint was dismissed for the want of equity. They bring the record here.

The amended complaint filed on behalf of the plaintiffs and others similarly situated, made, with others, the following allegations:

(1) The four plaintiffs are each residents of Cook county, Illinois, and citizens of the United States. They are, and have been for many years last past, members of a trade known in the plumbing industry as that of "drain-layers," and have been continuously following that trade within the city of Chicago and other parts of Cook county and desire to continue in such vocation. The first and second plaintiffs are contractors in the trade and the third and fourth are engaged as employees in such trade. There are now seven hundred men, residents of the State, who were prior to July 1, 1935, members of such calling.

(2) The trade embraces the following types of work: (a) The laying and connecting of tile, concrete and other non-metallic piping for a sanitary drainage system within a building; the laying and connecting of all tile, concrete and other non-metallic piping, drain or waste pipes carrying domestic sewage from the foundation walls of a building to the sewer service lateral at the curb or in the street or alley or other disposal terminal holding private or domestic sewage; the installation, repair, maintenance and

work upon and in connection with such tile, concrete and other non-metallic piping, drain or waste pipes; (b) the laying and connecting of tile, concrete and other non-metallic piping in and for main sewers.

(3) The work described in subdivision (b) consists principally of the actual laying of the pipe and connecting the various lengths of such pipes with cement or by other sealing processes. Approximately forty per cent of the work of the trade consists of the class of work described in subdivision (a). Work described in that subdivision of the value of many millions of dollars has been performed for many years last past by members of the trade with the utmost efficiency and without in any way endangering the public health. Plaintiffs and other members of the industry are skilled in the types of work described in subdivisions (a) and (b). There is a well recognized and well defined distinction between the plumber's trade and the drain-layer's trade. Prior to July 1, 1935, the work described in subdivisions (a) and (b) had never been considered as coming within the scope of the plumbing craft. Members of the latter occupation as such were not by training qualified to do the work described in such subdivisions (a) and (b). The work of the plumber's trade with reference to sewage systems in the State had been confined generally to work on metal piping. However, a very small number of sewage systems in this State have been made with metal pipes. A knowledge of the plumber's trade is not essential to qualify a person as a member of the drain-layer's trade. The scope of the plumber's employment embraces many types of work which are entirely foreign to the trade of a drain-layer. There is no distinction between the work described in subdivision (a) and subdivision (b) with reference to the skill required by members of the trade and the protection of the public health. Prior to July 1, 1935, there was no State law in force in Illinois regulating or licensing members of the

drain-layer's trade. Most of the work of that trade was done in the various municipalities under the supervision of the public officials. In the city of Chicago there was, and is now, in force a city ordinance requiring members to pass an examination before following that calling, licensing the business of drain-layers as to the work specified in subdivision (a) and otherwise regulating the labor of said trade. The first and second plaintiffs were on July 1, 1935, and prior thereto, licensed under the city ordinance and the third and fourth held permits thereunder.

We have not undertaken to set out all the averments of the complaint but such portions are set forth above as we deem pertinent to the issues here. The work specified in subdivision (a) is known in the trade as "stub-sewer" work.

In the consideration of the case we assume the correctness of the facts well pleaded in the amended complaint inasmuch as their truth is admitted by the motion to strike.

The plaintiffs charge that the act of 1935 violates several constitutional provisions. It will not be necessary to consider all of them. It is first urged that the act in question runs contrary to section 22 of article 4 of our State constitution, which prohibits the granting of special privileges; that it offends the equal protection clause of the fourteenth amendment to the Federal constitution, and that as applied to the plaintiffs and others similarly situated it is an unreasonable exercise of the police power.

The act relating to plumbers, enacted in 1917, (Smith's Stat. 1933, chap. 24, p. 483; Cahill's Stat. 1933, chap. 109a, p. 2142;) did not define either the word "plumber" or "plumbing." It did not purport to regulate the character of labor set forth in subdivisions (a) and (b) or authorize licenses under that act to follow that calling. Such statute provided for examinations for licensing master plumbers and journeyman plumbers. An examining board was provided for in cities, towns and villages of 10,000

inhabitants or more. An applicant was required to pass such examination as to his qualifications as the board, with the approval of the Department of Registration and Education, might direct. The statute required the examination to be upon the applicant's practical knowledge of plumbing, house drainage and plumbing ventilation. The fee for a certificate of a master plumber was $50, of a journeyman plumber, one dollar. The certificates were to be renewed annually.

"Plumbing," as defined in the act of 1935, is divided into three subdivisions, as follows: "(1) All piping, fixtures, appurtenances and appliances for a supply of water for all personal or domestic purposes in and about buildings where a person or persons live, work or assemble. Plumbing as used herein shall also include piping, fixtures, appurtenances and appliances for a sanitary drainage and related ventilation system within a building, and all piping, fixtures, appurtenances and appliances outside a building connecting the building with the source of water supply on the premises or the main in the street, alley or at the curb. (2) All piping, fixtures, appurtenances, appliances, drain or waste pipes carrying domestic sewage from the foundation walls of a building to the sewer service lateral at the curb or in the street or alley or other disposal terminal holding private or domestic sewage. (3) Plumbing shall also include the installation, repair, maintenance and work upon and connection with such piping, fixtures, appliances, appurtenances, drain or waste pipes, except minor repairs by a person upon his own premises." Laws of 1935, p. 1059.

Those having licenses under the 1917 act are permitted to have them renewed under the provisions of the act. The act of 1917 is purported to be repealed by the act of 1935. A state board of plumbing examiners under the supervision of the Department of Registration and Education (hereinafter called the department) is created by the latter

law. The fee for taking the examination for a master plumber is fixed at $100 and for a journeyman plumber at $25. The fees for practicing the trade are $25 annually for master plumbers and $2 for journeyman plumbers, with provision for annual renewals upon payment of like fees.

The act of 1935 requires an applicant, excluding those licensed under the 1917 act, desiring to take an examination to become a licensed journeyman plumber, to show either (1) that he has been occupied as a plumber's apprentice for five years, or (2) that he has pursued a course in plumbing, sanitary engineering, mechanical engineering or civil or architectural engineering for at least three years in a recognized college or university and has also served two years as a registered plumber's apprentice. If, after securing a journeyman plumber's license, an applicant desires to become a master plumber, he must show, before being admitted to such examination, that (1) he has been continuously engaged as a licensed journeyman plumber for at least five years, or (2) that he has been graduated from a recognized college or university either in the course of plumbing, sanitary engineering, mechanical engineering, civil engineering or architectural engineering and has also been employed by a licensed master plumber for at least two years as a licensed journeyman plumber, or (3) that the applicant has been a student in a recognized college or university and has pursued a course in either plumbing, sanitary engineering, mechanical engineering, civil engineering or architectural engineering for at least three years and has thereafter been employed by a master plumber for at least three years as a licensed journeyman plumber. A plumber's apprentice, in order to register as such, must be at least sixteen years old and must make application for registration to the department on forms prescribed by it. His application must be accompanied by an affidavit of a licensed master plumber that the applicant is to be em-

ployed immediately by such master plumber upon the issuance of the certificate of registration. Act of 1935, sec. 6.

It is one of the fundamentals of our democratic form of government that every citizen has the inalienable right to follow any legitimate trade, occupation or business which he sees fit. His labor is his property, entitled to the full and equal protection of the law under the due process clause of the Federal constitution. It is also embraced within the constitutional provision guaranteeing to everyone liberty and the pursuit of happiness. (*Allgeyer* v. *Louisiana,* 165 U. S. 578, 41 L. ed. 832.) This right to pursue any trade or calling is subordinate to the right of the State to limit such freedom of action by statutory regulation where the public health, safety or welfare of society may require. (*Nebbia* v. *New York,* 291 U. S. 502, 78 L. ed. 940.) However, in those instances where the police power is invoked to regulate and supervise a legitimate occupation the restraint imposed must be reasonable. The determination by the General Assembly that such regulations upon a trade are needful is not conclusive and is always subject to review. In order for such regulations to be lawfully imposed upon the constitutional rights of the citizen to pursue his trade or business, the act passed under the guise of a measure to protect the public health, comfort or welfare must have a definite relation to the ends sought to be attained. *Banghart* v. *Walsh,* 339 Ill. 132.

It appears that the trade of drain-layer was recognized by the ordinances of the city of Chicago as early as the year 1905. It is quite obvious that the work of the drain-layer's trade in laying stub-sewers is embraced within the meaning of the plumbing trade as defined in the act of 1935. It is also equally apparent that in order to qualify for a license under the plumbing trade a drain-layer must be proficient in many subjects which are wholly foreign to his trade and in a practical sense are not related to it. It could be of no material value to a craftsman who confines

his labor to that of a drain-layer to be educated in plumbing in all its different ramifications, many phases of which have no connection with or relation to the drain-layer's trade. Drain-layers by the act are unmolested in the laying of main sewers, whose function, so far as the public health is concerned, is of the highest importance. While a drain-layer is a skilled workman, his work is purely manual. He does not devise any system of drainage. He makes no connection at the junction of the stub-sewer with the main sewer. He has nothing to do with the metal pipes, fixtures and appurtenances which are the integral parts of the "plumbing system," as that term is commonly understood, but merely lays and seals the non-metallic pipes or tile which conduct sewage from the building to the outlet sewer. The work of a drain-layer may properly be conducted by a journeyman plumber as an incident to his installation of a plumbing plant for the disposal of sewage from a building, under the supervision of a master plumber. But it does not follow because a journeyman plumber may be competent to lay the non-metallic pipe that a drain-layer skilled in his work is not equally qualified. The trade of a drain-layer is an independent trade, not requiring the scientific knowledge necessary to plan, devise and install either a sewage, water or ventilating system in public buildings nor that the laborer be educated in sanitary engineering. His is not the function of a sanitary engineer. No citizen should be legislated out of his trade and have it awarded to another craft under the garb of a health measure where it is not definitely related to such measure. This phase of the act of 1935 cannot be supported as a police power dealing with the health, welfare, safety or comfort of the public. (*Banghart* v. *Walsh, supra.*) It is unreasonable to require one who desires to follow the trade of a drain-layer to serve the five years' apprenticeship required by the act in order to pass the examination as journeyman plumber, or in lieu thereof the years of collegiate training

and practice as a journeyman plumber's apprentice. It is equally unreasonable to exact from a mechanic the five years of practical experience as a journeyman plumber, or in lieu thereof the educational requirements and service as a journeyman plumber, in order to qualify him to take and pass the examination for a master plumber's license, so that the applicant may carry on the business of a drain-layer as distinguished from the trade of a drain-layer. *Banghart* v. *Walsh, supra.*

Appellee contends that the complaint did not state such a case as entitled the plaintiffs to relief in a court of equity. In the conclusion we have reached the complaint was properly filed, inasmuch as the attempt to regulate the business and vocation of the plaintiffs in the manner undertaken by the legislative act was an unreasonable exercise of the police power. The plaintiffs had the right to follow their trade, and to impose upon them the restraint contemplated by the Plumber's act of 1935 would have occasioned them and others in like situation a special injury for which there was no adequate remedy at law. In that situation an injunction will lie to prevent the enforcement of an invalid statute. *Western Theological Seminary* v. *City of Evanston,* 325 Ill. 511; *Callaghan & Co.* v. *Smith,* 304 id. 532; *Pierce* v. *Society of Sisters,* 268 U. S. 510, 69 L. ed. 1070.

The act of 1935, as applied to the plaintiffs and others in like situation, undertakes to deprive them of their liberty and property without due process of law. It offends section 2 of article 2 of our State constitution and the fourteenth amendment to the Federal constitution. *Wedesweiler* v. *Brundage,* 297 Ill. 228; *Banghart* v. *Walsh, supra.*

The judgment of the circuit court of Cook county is reversed and the cause is remanded to that court, with directions to overrule the motion to strike.

*Reversed and remanded, with directions.*