CONSULTANTS & ADMINISTRATORS, INC., Plaintiff-Appellant, *v.* THE DEPARTMENT OF INSURANCE *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 81-283

Opinion filed January 12, 1982.

George J. Haddad, of Chicago, for appellant.

Tyrone C. Fahner, Attorney General, of Chicago (Joseph D. Keenan, III, Assistant Attorney General, of counsel), for appellees Department of Insurance and Phillip R. O'Connor.

Martin, Craig, Chester & Sonnenschein, of Chicago (Thomas B. Cassidy, of counsel), for appellee Illinois Vision Services Plan.

JUSTICE DOWNING delivered the opinion of the court:

Plaintiff Consultants & Administrators, Inc. (C&A), appeals from the decision of the circuit court of Cook County which upheld an administrative order entered by defendant Illinois Department of Insurance (DI). DI had directed C&A to comply with the provisions of the Voluntary Health Services Plans Act (the Health Act) (Ill. Rev. Stat. 1979, ch. 32, par. 595 *et seq.*) or show that it was exempt therefrom.

C&A argues that (1) DI lacks jurisdiction over it, having been preempted by the Federal Employee Retirement Income Security Act of 1974 (ERISA); (2) the Health Act is not mandatory, but rather is permissive in nature; (3) the Health Act violates "the constitutional and civil rights" of C&A; (4) the circuit court violated C&A's procedural due process rights; and (5) DI is "perpetuating an unconstitutional monopoly" in violation of Federal antitrust law.

In 1966, the Chicago Newspaper Publishers Association and a division of the Teamsters Union agreed to create a trust entity (the Trust) for the benefit of the employees of Chicago's major daily newspapers. The trust agreement was amended in March 1976 to conform to the provisions of ERISA (29 U.S.C. §1001 et seq. (1976)).[1] On March 15, 1976, the Trust entered into a contract with C&A. Under that contract, C&A was to provide facilities for a dental care program and an optometric/vision care program for beneficiaries of the Trust, and was to contract with professional and technical personnel to conduct the programs. The Trust was obligated to pay C&A $16.25 per month for each participant-beneficiary enrolled in the programs.

On February 1, 1979, defendant Illinois Vision Services Plan (IVSP), a business entity incorporated under the Illinois Vision Service Plan Act (the Vision Act) (Ill. Rev. Stat. 1979, ch. 32, par. 651 et seq.), complained to DI that it had encountered competition from C&A, which firm, IVSP believed, had not been incorporated under that statute. IVSP requested that DI conduct an investigation of C&A's activities to determine its compliance with Illinois law. DI proceeded with the requested investigation and eventually informed C&A that it believed the latter was operating in violation of both the Vision Act and the Illinois Dental Service Plan Act (the Dental Act) (Ill. Rev. Stat. 1979, ch. 32, par. 690.1 et seq.). DI suggested that C&A file an application for certification under the Health Act. C&A responded that it would seek a declaratory judgment in court on the matter (which action C&A apparently never pursued). In the face of C&A's intractability, DI initiated formal administrative proceedings to determine whether C&A was indeed operating in violation of the Health Act by providing dental and optical services without procuring a charter under that statute. Ill. Rev. Stat. 1979, ch. 32, par. 602.

On December 14, 1979, a hearing was held before an appointed hearing officer.[2] At that hearing, a single witness appeared, having been called by DI. Essentially, the witness, Ronald Chew, assistant deputy director in the health delivery section of DI, stated that he believed C&A was operating a voluntary health services plan in violation of the pro-

---

[1] The Attorney General, representing DI, informs us that the Trust itself is an "employee welfare benefit plan" under ERISA. That statute defines such a plan as:

"[A]ny plan, fund, or program which ° ° ° is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical ° ° ° benefits ° ° °." (29 U.S.C. §1002(1) (1976).)

We accept this representation as being correct. See, e.g., Russo v. Boland, 103 Ill. App. 3d 905, 908.

[2] IVSP was allowed to intervene in this and subsequent proceedings.

visions of the Health Act. C&A did not attempt to rebut this conclusion, instead asserting among other things that the Health Act was preempted by ERISA, was unconstitutional, and was not intended to cover the operation of a private corporation.

The hearing officer recommended that DI terminate the proceeding without prejudice. The director of DI declined to accept this recommendation. Instead, he issued a lengthy administrative decision finding C&A to be operating a voluntary health services plan without incorporating under the Health Act, in violation of that statute. The director ordered C&A to comply therewith. C&A responded by seeking judicial review of this administrative determination. After hearing the parties' arguments and examining their briefs, the circuit court affirmed the administrative decision in its entirety.

## I

C&A argues that ERISA preempts the Health Act and that DI thus lacked jurisdiction to proceed against it, relying on the following provisions of ERISA:

"(a) Except as provided in subsection (b) of this section, the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan * * *.

* * *

(b)(2)(A) Except as provided in subparagraph (B), nothing in [ERISA] shall be construed to exempt or relieve any person from any law of any State which regulates insurance * * *.
(B) Neither an employee benefit plan * * * nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer * * * or to be engaged in the business of insurance * * * for the purposes of any law of any State purporting to regulate insurance companies * * *." 29 U.S.C. §1144 (1976).

■■ Initially, we note that C&A has not adequately contested on this appeal the factual finding of DI, which was affirmed by the circuit court, that C&A is operating a "voluntary health services plan" as defined in the Health Act,[3] and that C&A has not incorporated under the provisions of the Health Act (Ill. Rev. Stat. 1979, ch. 32, par. 597). Our resolution of this appeal thus proceeds from the premise that these factual determinations are correct. Consequently, we note that under these circumstances, C&A

---

[3] The Health Act defines such a plan as "a plan or system under which medical, hospital, dental, nursing and relating health services may be rendered to a subscriber or beneficiary, at the expense of a health services plan corporation." Ill. Rev. Stat. 1979, ch. 32, par. 596(b).

is subject to the provisions of the Health Act unless it is able to succeed on the merits of the ERISA-preemption argument or on its other claims.[4]

■■ Turning to the merits of C&A's argument, we are faced with an insurmountable obstacle to our resolution thereof. C&A has asked us to establish new Illinois precedent on a question of weighty significance, but has cited to us only two tangentially related Federal decisions and a segment of a California statute which we find of no relevance.[5] C&A's brief presents no argument demonstrating the relationship of the cases and the California statute to the present circumstances; its presentation at oral argument failed to clarify the matter. We note that the briefs of the Attorney General (representing DI) and IVSP attempted to address the substance of the issue in a coherent manner despite C&A's failings. Nonetheless, we do not feel that the law on the question nor the theorizations of either side thereupon have been adequately presented so as to enable this court to establish enlightened precedent in this complex field. This court will not research and argue a case for an appellant. (See *Thanopoulos v. Pickens* (1980), 87 Ill. App. 3d 906, 909, 409 N.E.2d 477; *Fogel v. Hodes* (1979), 68 Ill. App. 3d 594, 600, 386 N.E.2d 389; *47th & State Currency Exchange, Inc. v. B. Coleman Corp.* (1977), 56 Ill. App. 3d 229, 231-33, 371 N.E.2d 294, *appeal denied* (1978), 71 Ill. 2d 598.) This rule is especially applicable where, as here, the court's decision has such potentially significant ramifications. In light of the inadequacies of C&A's presentation of the ERISA preemption issue, we decline to reach its merits.[6] The remainder of this opinion therefore proceeds from the presumption that, despite ERISA, the Health Act is indeed applicable to C&A (barring its inapplicability based upon C&A's other arguments).

## II

C&A claims that the Health Act is "voluntary and not mandatory" and thus does not cover the type of arrangement involved in this case.

■■ C&A presents us with no relevant, authoritative support for its contention. This court has previously noted the underlying concerns of a statute similar to the Health Act: the Vision Act (Ill. Rev. Stat. 1979, ch. 32,

---

[4] We do not find any of the listed exceptions to the applicability of the Health Act, found in section 3, to be relevant to this case. See Ill. Rev. Stat. 1979, ch. 32, par. 597.

[5] C&A cites this court to *Delta Air Lines, Inc. v. Kramarsky* (2d Cir. 1981), 650 F.2d 1287; *Hewlett-Packard Co. v. Barnes* (N.D. Cal. 1977), 425 F. Supp. 1294, *aff'd* (9th Cir. 1978), 571 F.2d 502, *cert. denied* (1978), 439 U.S. 831, 58 L. Ed. 2d 125, 99 S. Ct. 108; and CAL. GOV'T CODE §12530 (Deering 1981 Supp.), repealed July 1, 1976, Stats. 1975, ch. 941, §1. We note again that C&A provided this court with *no* discussion of how these cited authorities are related to the circumstances of this case.

[6] As the remainder of our opinion makes clear, C&A's briefs in this case failed to even minimally comply with the terms of Supreme Court Rule 341 regarding the content of briefs. (73 Ill. 2d R. 341.) We suggest that appellate counsel make use of the directive provisions of that rule.

par. 651 *et seq.*). We noted that the Vision Act involves two major concerns: that corporations providing vision services have sufficient monetary reserves to insure the performance of their contractual obligations, and that beneficiaries of such plans have the opportunity to choose from a significant plurality of available practitioners in using the vision services provided. (*National Consolidated Industries, Ltd. v. Department of Insurance* (1979), 73 Ill. App. 3d 816, 820-21, 392 N.E.2d 295.) We believe these concerns are equally applicable to health services rendered by a health services plan corporation. Clearly, achievement of these considerations would be severely undermined were the Health Act read as a permissive, rather than mandatory, statute. Consequently, we are unconvinced by C&A's unsupported claim to that effect. The Health Act envisions mandatory compliance by all voluntary health services plans, including C&A.

### III

C&A raises constitutional issues in regard to the outcome below.

### A.

■■ C&A claims that the Health Act is unconstitutional. In support of this argument, C&A reprints a large segment of the supreme court's opinion in *Scully v. Hallihan* (1936), 365 Ill. 185, 6 N.E.2d 176, and adds a one-sentence "paraphrasing" of the rule of that case applied to the facts of this case. General allegations of constitutional violations which do not specify the manner in which the asserted constitutional rights are infringed do not adequately raise constitutional claims. (*Redmond v. Novak* (1981), 86 Ill. 2d 374, 378, 427 N.E.2d 53.) We therefore will not address this part of C&A's constitutional claim.

### B.

C&A argues that it was denied procedural due process in the circuit court proceeding, citing *Drezner v. Civil Service Com.* (1947), 398 Ill. 219, 231, 75 N.E.2d 303. We have reviewed the record of proceedings from the circuit court and find no basis therein for holding that the circuit court's action violated either the rule of the *Drezner* case or any constitutional matters connected therewith.

### IV

■■ Finally, C&A contends that DI "and other persons, corporations, and associations * * * have combined to restrain competition in the field of health service in violation of the Anti-Trust laws of the United States," citing the United States Code.

Judicial proceedings under Federal antitrust statutes (15 U.S.C. §1

*et seq.* (1976)) may only be brought in Federal court; State courts lack jurisdiction to accept such causes of action.[7] (See *Blumenstock Brothers Advertising Agency v. Curtis Publishing Co.* (1920), 252 U.S. 436, 440, 64 L. Ed. 649, 40 S. Ct. 385; *Van Dusen-Storto Motor Inn, Inc. v. Rochester Telephone Corp.* (1972), 72 Misc. 2d 34, ___, 338 N.Y.S.2d 31, 34-35, *modified on other grounds* (1973), 42 App. Div. 2d 400, 348 N.Y.S.2d 404, *aff'd* (1974), 34 N.Y.2d 904, 359 N.Y.S.2d 286, 316 N.E.2d 719; see generally 54 Am. Jur. 2d *Monopolies, Restraints of Trade, and Unfair Trade Practices* §265 (1971).) Thus, C&A's claim cannot be addressed by this court.

For the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

STAMOS, P. J., and HARTMAN, J., concur.

---

[7] In order to bring a valid antitrust claim in Illinois courts, C&A should have relied upon the Illinois Antitrust Act. Ill. Rev. Stat. 1979, ch. 38, par. 60—1 *et seq.*