CARL EDMUND SHELTON, Appellant and Cross-Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Inland Steel Coal Company, Appellee and Cross-Appellant).

Fifth District (Industrial Commission Division)    No. 5—93—0358WC

Opinion filed September 2, 1994.—Rehearing denied November 15, 1994.

Harold B. Culley, Jr., of Culley & Wissore, of Raleigh, for appellant.

Michael F. Dahlen and Gary B. Nelson, both of Feirich/Schoen/Mager/Green, of Carbondale, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Claimant, Carl Edmund Shelton, appeals from an order of the circuit court of Franklin County affirming a decision of the Illinois Industrial Commission (Commission) awarding him permanent loss of use of the man as a whole to the extent of 17.5%. The employer, Inland Steel Coal Company, cross-appeals seeking dismissal of the claim for benefits on constitutional and statutory grounds.

At the time of the arbitration hearing on October 20, 1991, claimant was 75 years of age. He attended school up to the eleventh grade. Prior to working in the coal mining industry, claimant worked on a farm, was in the Navy, and worked as an auto mechanic. He never worked at a desk job. He worked in the coal mining industry for 29 years as a plant mechanic, making repairs on equipment which required him to do welding. He also had to walk up and down five flights of stairs carrying his tools, which weighed between 10 and 25 pounds. Originally he worked at Inland 1, but the dust conditions were so bad there that in March 1979 he was informed he had black lung severe enough to entitle him to a change to a new location. He transferred to Inland 2, where he remained until he retired on October 31, 1981. According to claimant, he inhaled coal dust every day he worked at the mines.

Claimant further testified that he smoked cigarettes, approximately one pack per day for approximately 40 years. He quit smoking in 1989. According to claimant, for about three to four years prior to his retirement, he experienced shortness of breath when he tried to exert himself, *i.e.*, climbing stairs or carrying loads. His breathing difficulties continued to get worse. He retired in 1981 because he could not keep up with his work. Since his retirement, claimant has suffered two strokes and has been diagnosed with Parkinson's disease. Since 1981, his breathing difficulties have gradually gotten worse. He can walk only 25 to 30 yards before becoming short of breath.

On cross-examination, claimant testified that he did not take a medical retirement for disability purposes; he made the decision to retire in 1981. His smoking history was closer to 50 years in length. He acknowledged that he had been told he had emphysema but denied that any of his doctors had told him to quit smoking. His ability to move around was also affected by his strokes. He also suffered from high blood pressure.

Admitted into evidence were the evidence depositions of the various medical experts in this case. Their testimony is summarized below.

Dr. William Charles Houser, board certified in internal medicine and pulmonary diseases, testified on behalf of the employer. Dr. Houser obtained a history from and conducted a complete pulmonary evaluation of claimant which included a chest X ray on June 29, 1988. He concluded that claimant was suffering from coal workers' pneumoconiosis (CWP) related to his exposure to coal dust and his work as a welder in his 29 years as a coal miner. Dr. Houser also opined that claimant was suffering from chronic bronchitis, as well as chronic obstructive pulmonary disease due to his coal mining activities and his history of cigarette smoking.

On cross-examination, Dr. Houser testified that claimant's exposure to asbestos could also have adversely affect his lungs. It is impossible to distinguish in claimant which of the factors caused his present condition of ill-being because of the varying susceptibility of individuals.

Dr. Parviz B. Sanjabi, an internist and pulmonologist, testified for the claimant. He took a medical history from and examined claimant on November 4, 1985. After reviewing claimant's chest X ray and the pulmonary function studies, Dr. Sanjabi concluded that claimant suffered from bullous emphysema and CWP, which he suffered from at the time he retired in 1981. According to Dr. Sanjabi, claimant could not have continued working in the mines without endangering his health or life.

On cross-examination, Dr. Sanjabi testified that claimant suffered from chronic bronchitis, as well as bullous emphysema, both of which were obstructive conditions. On redirect examination, the doctor agreed that CWP was a contributing factor to the obstructive condition in his lungs.

Dr. Elliot O. Partridge, a family practitioner, testified for the claimant. On July 8, 1980, he examined claimant on behalf of the United States Department of Labor in connection with a Federal black lung action claimant had filed. Based on claimant's medical history and his examination, Dr. Partridge diagnosed claimant as suffering from chronic obstructive pulmonary disease (COPD), resulting from his mining employment and his 40-year history of cigarette smoking. After reviewing the recent medical reports and test results, Dr. Partridge opined that claimant was suffering from CWP. He further opined that claimant was totally disabled from being gainfully employed as a coal miner or other comparable work because "pulmonarywise," he was unable to perform adequately. In claimant's case, the CWP resulted from lung damage caused by his welding activities, pneumoconiosis, and his cigarette smoking, as well as the aging process. It was impossible to determine to what degree each factor caused the damage to claimant's lungs. Cigarette smoking does not cause CWP.

On cross-examination, Dr. Partridge testified that claimant should not be exposed to either coal dust or cigarette smoke. Pneumoconiosis was a component part of claimant's condition of COPD in 1980.

Dr. Stephen Kelly, board certified in internal medicine and pulmonary medicine, testified on behalf of the employer. Dr. Kelly testified that obstructive impairments in the lungs typically included COPD, which comprises emphysema, bronchitis, and asthma. Coal dust exposure, if it causes a pneumoconiosis, would produce a restrictive ventilatory pattern. Coal dust can also contribute to a much lesser degree to an obstructive type of pattern. Cigarette smoking produces an obstructive ventilatory pattern; generally, it does not, in and of itself, produce a restrictive type of pattern.

Based upon claimant's medical history and test results and deposition testimony from claimant and Dr. William Getty, Dr. Kelly opined that claimant's pulmonary disability was caused predominately by cigarette smoking, with coal dust a minor contributing cause. However, claimant would be totally disabled solely on the basis of his smoking-induced COPD.

On cross-examination, Dr. Kelly testified that he would recommend to a patient with CWP that the patient cease exposure to coal

dust. In his opinion, claimant was totally disabled from gainful employment and his pulmonary impairment was a causative factor of his disability. On re-cross-examination, Dr. Kelly testified that claimant suffered from simple CWP rather than progressive massive fibrosis.

Dr. Peter Tuteur, board certified in internal medicine and pulmonary medicine, testified for the employer. He reviewed claimant's medical history as well as his medical records. Dr. Tuteur opined that claimant suffered from cigarette-smoke-associated chronic obstructive pulmonary disease. Claimant did not suffer from restrictive pulmonary disease caused by simple CWP since his lung capacity measurements had always been above normal and in fact have been increasing. Dr. Tuteur further opined that claimant's present condition of ill-being was not related to, caused by, or aggravated by his inhalation of coal dust; the compression of his lung tissue was caused by his condition of bullous emphysema. On cross-examination, Dr. Tuteur testified that he had not examined claimant.

Dr. Robert M. Bruce, board certified in internal medicine and pulmonary medicine, testified for the employer. On February 3, 1991, he examined claimant and took a medical history from him. He also reviewed claimant's medical records and hospital reports. Based on the results of the pulmonary function test, Dr. Bruce concluded that claimant had severe airways obstruction with no evidence of a restrictive component. Obstructive impairments are associated with reduction in air flow rates. Restrictive impairments result from any process that causes the total lung capacity to become smaller than predicted. Emphysema and chronic obstructive bronchitis are obstructive impairments. While in most cases simple CWP does not interfere at all with lung function, when it does, it causes a restrictive pattern. Dr. Bruce opined that claimant suffered from a severe airway obstruction caused by cigarette-induced emphysema and obstructive bronchitis. Claimant showed no evidence of a restrictive process from any cause.

Dr. Bruce further opined that claimant was disabled from a pulmonary standpoint, and that the disablement was caused by his condition of emphysema and chronic bronchitis. Claimant did suffer from simple CWP, but his simple CWP did not cause any physiologic changes that could be measured on pulmonary function studies. Claimant's inhalation of coal dust neither caused nor aggravated his physiologic changes; his cigarette smoking alone could account for the changes on the pulmonary function studies.

On cross-examination, Dr. Bruce testified that claimant's emphysema was not caused by his inhalation of coal dust. Claimant's inha-

lation of coal dust, including silica dust, could have been a factor in the development or aggravation of his chronic bronchitis. Claimant's CWP was caused by his inhalation of coal dust. Coal dust is not generally a causative factor in the development or aggravation of an obstructive ventilatory defect.

On redirect examination, Dr. Bruce testified that for the inhalation of rock dust to lead to an obstructive abnormality, there would have to be a lung injury definable as silicosis.

The arbitrator found that claimant's present condition of ill-being was causally related to his employment as a coal miner. He further found that claimant was disabled to the extent of 17.5% of man as a whole. The arbitrator rejected the employer's argument that the claim for benefits was barred by section 6(c) of the Workers' Occupational Diseases Act (Act) (820 ILCS 310/6(c) (West 1992)). The Commission affirmed the decision of the arbitrator, and the circuit court confirmed the decision of the Commission. This appeal by claimant and cross-appeal by the employer followed.

We will address the issues raised in the employer's cross-appeal. First, the employer contends that claimant's claim is barred under section 6(c) of the Act (820 ILCS 310/6(c) (West 1992)). Section 6(c) provides in pertinent part as follows:

"In any case, other than injury or death caused by exposure to radiological materials or equipment or asbestos, unless application for compensation is filed with the Commission *within 3 years after the date of the disablement,* where no compensation has been paid, or within 2 years after the date of the last payment of compensation, where any has been paid, whichever shall be later, the right to file such application shall be barred." (Emphasis added.) (820 ILCS 310/6(c) (West 1992).)

Immediately following the above-quoted language, section 6(c) provides as follows:

"Effective July 1, 1973 *in cases of disability caused by coal miners pneumoconiosis* unless application for compensation is filed with the Commission *within 5 years after the employee has last exposed* where no compensation has been paid, or within 5 years after the last payment of compensation where any has been paid, the right to file such application shall be barred." (Emphasis added.) 820 ILCS 310/6(c) (West 1992).

The employer argues that while claimant filed his claim within five years of his last exposure, he failed to file it within three years of the date of his disablement, which the employer contends was October 31, 1981.

Claimant responds that his CWP was governed by the five-year statute of limitations, which was obviously intended to supplant the

three-year filing requirement preceding it in section 6(c) of the Act; otherwise, the five-year filing provision is nullified.

It is a basic precept of statutory construction that specific provisions control over general ones; moreover, statutes are to be construed in a way which does not render the language meaningless or superfluous. (*People v. Singleton* (1984), 103 Ill. 2d 339, 345.) Courts are obligated to construe statutes both to avoid absurd or unjust consequences and to affirm their constitutionality. *People v. Williams* (1987), 119 Ill. 2d 24, 28.

Where the language of a statute is susceptible to differing interpretations, it is necessary to ascertain the legislative intent by looking beyond the express words and considering the purpose to be served by the statute. (*Goodson v. Industrial Comm'n* (1989), 190 Ill. App. 3d 16, 18.) Different sections of the same statute should be considered as *in pari materia* and should be construed so as to avoid an illogical result. (*Goodson*, 190 Ill. App. 3d at 18.) In determining what the intent of the statute is, the court may properly consider not only the language used in a statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved. *Goodson*, 190 Ill. App. 3d at 18.

■ Examination of the legislative history discloses that that portion of section 6(c) which sets forth the five-year filing requirement specifically for CWP cases was passed subsequent to that part of section 6(c) specifying a three-year filing requirement. (820 ILCS 310/6(c), Historical & Statutory Notes, at 747 (Smith-Hurd 1993).) We agree with the claimant that the statutory construction urged by the employer would effectively nullify the five-year filing period provided specifically for CWP. It would render meaningless the legislature's amendment in section 6(c) of the Act to include a special filing time for CWP based on the date of last exposure.

Therefore, in light of the fact that the five-year filing requirement followed in time the three-year filing requirement and the fact that the five-year filing requirement is specifically directed at CWP, we conclude that claimant's claim was not barred by the provisions of section 6(c) of the Act.

Second, the employer also contends that the Act is unconstitutional in that it violates due process, having no legally fixed standards, and that the statute is vague.

Statutes are presumed to be constitutional, and one who challenges a provision has the burden of establishing its invalidity. (*City of Geneva v. Du Page Airport Authority* (1990), 193 Ill. App. 3d 613, 621.) Legislation will survive a substantive due process challenge so long as it is reasonably designed to remedy the evils the legislature

has determined to be a threat to the public health, safety, and general welfare. (*People v. Sonntag* (1992), 238 Ill. App. 3d 854, 861.) The due process clause requires only that the statute be reasonably designed to accomplish its purposes, not that it be the best means of accomplishing them. *People v. Smith* (1984), 124 Ill. App. 3d 805, 811.

The employer argues that unlike the Federal system there are no guidelines under Illinois law for an arbitrator to apply in assessing the diagnostic sufficiency of chest roentgenograms, pulmonary function tests, arterial blood gas studies, and other medically accepted tests in cases of CWP. Further, under the Federal system, there are criteria for determining entitlement to disability payments, while under Illinois law, the arbitrator is left to make decisions which might be based upon speculation and guesswork. Finally, the employer argues that the State can have no legitimate interest in preserving standardless determination of benefits.

■ Claimant responds by pointing out that under the Federal statute black lung claims are decided largely on hearsay evidence, rather than testimonial evidence. Since predetermined formulas are used, medical testimony is often not utilized in Federal cases. In contrast, medical testimony is the key factor in the majority of cases under the Act. The decisions in such cases are governed by ordinary rules of evidence in civil cases. (*Coriell v. Industrial Comm'n* (1980), 83 Ill. 2d 105, 110.) Both parties to a claim under the Act may bring experts to interpret the results of the various medical tests. In each case, the arbitrator makes his or her findings of fact based upon the well-settled rules of evidence. Thus, although the Act contains no formulas, an arbitrator's decision in a case brought under the Act is hardly without standards, nor is it based on unlimited discretion as the employer would have us believe.

We are also unpersuaded by the employer's vagueness argument. Where a statute is so uncertain that people of ordinary intelligence must guess at its meaning, the statute denies due process. (*City of Geneva*, 193 Ill. App. 3d at 628.) An act is void if the language of the statute, on its face, appears to have a meaning to which it is impossible to give a precise or intelligent application in the circumstances under which it is intended to operate. (*City of Geneva*, 193 Ill. App. 3d at 628.) A civil statute is violative of due process if its terms are so vague and indefinite as really to be no rule or standard at all. *A.B. Small Co. v. American Sugar Refining Co.* (1925), 267 U.S. 233, 239, 69 L. Ed. 589, 593, 45 S. Ct. 295, 297.

The employer's reliance on *Giaccio v. Pennsylvania* (1966), 382 U.S. 399, 15 L. Ed. 2d 447, 86 S. Ct. 518, is misplaced. In that case, the United States Supreme Court found that the law that permitted

juries to assess costs against an acquitted defendant was unconstitutional as it provided no standards for the jury to apply in making such a determination. As we have previously observed, under the Act, the arbitrator is guided by the rules of evidence applicable in civil cases. Contrary to the employer's belief, uniformity in awards of benefits is neither a requirement nor an objective under the Act.

We therefore reject the employer's argument that the Act is unconstitutional.

We now turn to the merits of the claimant's appeal. Claimant asserts that he was permanently totally disabled and that the Commission erred in only awarding him 17.5% of the man as a whole. We, nevertheless, conclude that the Commission's decision was not against the manifest weight of the evidence.

The arbitrator found that claimant was permanently partially disabled based upon the claimant's testimony, as well as that of the medical experts. The arbitrator noted that since claimant's retirement: "[Claimant's] breathing has continued gradually to worsen. At the present time, his daily activities are severely restricted due to his shortness of breath. He could walk no more than twenty-five (25) yards before becoming short of breath, and he could climb no more than a few steps without having to stop to catch his breath." The arbitrator further noted that the medical opinions as to claimant's disability ranged from pulmonary impairment to complete disablement from gainful employment.

An employee is totally and permanently disabled for the purpose of workers' compensation benefits when he is unable to make some contribution to industry sufficient to justify payments to him of wages. (*A.M.T.C. of Illinois, Inc., Aero Mayflower Transit Co. v. Industrial Comm'n* (1979), 77 Ill. 2d 482, 487.) This does not require that the injured party be reduced to a state of total physical or mental incapacity or helplessness. (*A.M.T.C. of Illinois, Inc.*, 77 Ill. 2d at 487.) If an employee can take up some form of employment without endangering his health or life, he is not entitled to total and permanent disability compensation. (*A.M.T.C. of Illinois, Inc.*, 77 Ill. 2d at 488.) Just because a claimant cannot perform very strenuous physical labor does not, by itself, entitle him to an award as permanently and totally disabled. *A.M.T.C. of Illinois, Inc.*, 77 Ill. 2d at 489.

At the time of the arbitration hearing, claimant was 75 years of age. He attended school up to the eleventh grade. In addition to coal mining, his work history included farming and employment as an automobile mechanic. The majority of the medical experts in this case concluded that claimant could not return to coal mining because his exposure to coal dust would be detrimental to his health. His

shortness of breath inhibited his ability to walk more than 25 feet or to climb stairs. Most of the medical experts in his case found that claimant was pulmonarily impaired. Dr. Partridge found that claimant was totally disabled from coal mining or comparable employment. Dr. Kelly concluded that claimant was totally disabled from gainful employment. However, Dr. Kelly also concluded that claimant would have been totally disabled solely on the basis of smoking-induced chronic obstructive pulmonary disease.

If the claimant's disability is limited in nature so that he is not obviously unemployable or if there is no medical evidence to support a claim of total disability, the burden is on the claimant to establish the unavailability of employment to a person in his circumstances. (*Valley Mould & Iron Co. v. Industrial Comm'n* (1981), 84 Ill. 2d 538, 546-47.) This burden may be met by a showing of diligent but unsuccessful attempts to find work or by proof that because of his age, training, education, and experience he is unfit to perform any but the most menial tasks for which no stable market exists. *Valley Mould & Iron Co.*, 84 Ill. 2d at 547.

■ In this case, claimant retired at the age of 65. Although he stated that he retired because he could no longer keep up with the work, he did not retire on the recommendation of his doctor because of any medical disability. There is no evidence in the record that claimant conducted a search for employment following his retirement or that he was turned down for employment due to any disability. It could be inferred from the testimony that claimant did not seek employment because of his retirement. Although there is no *per se* rule that a retired person is entitled to an award of permanent disability, the fact of retirement cannot be ignored.

This case is distinguishable from both *Monterey Coal Co. v. Industrial Comm'n* (1992), 241 Ill. App. 3d 386, and *Zeigler Coal Co. v. Industrial Comm'n* (1992), 237 Ill. App. 3d 213. In *Monterey Coal Co.*, there was testimony that claimant could not perform any gainful employment, and due to his age and lack of education and training, as well as his significant physical limitations, this court found that there was no reasonably stable market for his services. In *Zeigler Coal Co.*, there was medical testimony that claimant's disability was total and permanent, and the claimant testified that he was no longer able to do any work.

An employee bears the burden of proving all of the elements of his case, including the extent and permanency of the injury. It is within the province of the Commission to determine the factual issues, to decide the weight to be given to the evidence and the reasonable inferences to be drawn therefrom, and to assess the

credibility of the witnesses. The Commission's determination of these issues will not be set aside unless it is against the manifest weight of the evidence. *Marathon Oil Co. v. Industrial Comm'n* (1990), 203 Ill. App. 3d 809, 815-16.

It is a reasonable inference from the record in this case that claimant's present state of health would not have totally prevented him from seeking other employment upon his retirement and that given his education and previous work experience there would have been a reasonably stable market for his services.

We therefore conclude that the Commission's award of permanent partial disability to the extent of 17.5% of the man as a whole was not against the manifest weight of the evidence.

The judgment of the circuit court is affirmed.

Affirmed.

RAKOWSKI, SLATER, and RARICK, JJ., concur.

PRESIDING JUSTICE McCULLOUGH, specially concurring:

I agree that the five-year filing period in cases caused by coal miner's pneumoconiosis does apply.

The respondent in his brief cites to section 1(f), which requires that the disablement occur within two years after the last day of last exposure (820 ILCS 310/1(f) (West 1992)). Other than this bare statement, the respondent does not argue nor does he point to any evidence to show that the claimant did not prove that the disease occurred within two years after last exposure.

This court has stated that section 1(f) does apply in cases similar to this, and I write this special concurrence only to point out that the applicability of section 1(f) is not pursued by the respondent.