(No. 83289.— )

THE PEOPLE *ex rel.* JOHN R. LUMPKIN, Director of Public Health, Appellant, v. DANIEL CASSIDY *et al.*, Appellees.

*Opinion filed September 24, 1998.—Rehearing denied November 30, 1998.*

HEIPLE, J., joined by NICKELS, J., dissenting.

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and Marcia L. McCormick, Assistant Attorney General, of Chicago, of counsel), for appellant.

Alfred Y. Kirkland, Jr., of Brady & Jensen, of Elgin, for appellees.

JUSTICE HARRISON delivered the opinion of the court:

Under the Illinois Plumbing License Law (225 ILCS 320/0.01 *et seq.* (West 1996)), lawn sprinkler systems can only be installed by licensed plumbers; licensed apprentice plumbers under the supervision of a licensed plumber; or, where a single family residence is involved, by the owner, owner occupant or lessee occupant of the residence. The issue in this case is whether that limitation is constitutional and can be enforced by the State to prevent a lawn sprinkler company from using unlicensed laborers to install the pipes and sprinkler heads in its lawn sprinkler systems where the system includes a backflow prevention device installed by a licensed plumber to prevent contamination of the water supply. The circuit court answered this question in the negative, holding that the limitation in the statute as applied in this case constitutes an "unreasonable interference with personal

and property rights *** within the meaning of the State and Federal Constitutions." The State brought a direct appeal to this court under our Rule 302(a) (134 Ill. 2d R. 302(a)). We now reverse and remand.

The litigation before us commenced when the State filed suit in the circuit court of Du Page County to enjoin Daniel Cassidy and his business, KADC Corporation, d/b/a Sundance Irrigation (hereinafter referred to collectively as Cassidy), from using laborers rather than licensed plumbers to install the pipes and sprinkler heads in its lawn sprinkler systems. The basis for the State's suit was that the use of laborers violated the Illinois Plumbing License Law (225 ILCS 320/0.01 *et seq.* (West 1996)).

The Illinois Plumbing License Law mandates that "all plumbing shall be performed only by plumbers licensed under the provisions of this Act hereinafter called 'licensed plumbers' and 'licensed apprentice plumbers.'" 225 ILCS 320/3(1) (West 1996). As used in the statute, "'plumbing' means the actual installation, repair, maintenance, alteration or extension of a plumbing system by any person" and is defined to include "lawn sprinkler systems." 225 ILCS 320/2 (West 1996). Accordingly, the law in Illinois is that lawn sprinkler systems can only be installed by a licensed plumber or a licensed apprentice plumber. Where the work is done by a licensed apprentice plumber, the apprentice must be supervised by a licensed plumber. 225 ILCS 320/3(4)(a) (West 1996).

The statute recognizes an exception to these rules for the owner occupant or lessee occupant of a single family residence or the owner of a single family residence under construction for his or her occupancy. Such owner, owner occupant or lessee occupant is not prohibited

"from planning, installing, altering or repairing the plumbing system of such residence, provided that (i) such plumbing shall comply with the minimum standards for

plumbing contained in the Illinois State Plumbing Code, and shall be subject to inspection by the Department or the local governmental unit if it retains a licensed plumber as an inspector; and (ii) such owner, owner occupant or lessee occupant shall not employ other than a plumber licensed pursuant to this Act to assist him or her." 225 ILCS 320/3(2) (West 1996).

The Illinois Plumbing License Law provides that persons violating the act or a rule or regulation promulgated thereunder

"shall be guilty of a Class B misdemeanor and a fine of $500 for the first offense; and a second or subsequent violation of this Act shall be guilty of a Class A misdemeanor with a fine of $1,000." 225 ILCS 320/29(1) (West 1996).

The State's Attorney of the county in which the violation occurred or the Attorney General, acting in the name of the People of the State of Illinois, is responsible for bringing enforcement actions. In such actions, the court may enjoin the use of plumbing installed in violation of the law or a rule or regulation promulgated thereunder until it has been corrected. 225 ILCS 320/29(1) (West 1996). In addition,

"[i]f it is established that the defendant contrary to this Act has been or is engaging in or about to engage in plumbing without having been issued a license or has been or is engaged in or is about to engage in plumbing after his or her license has been suspended or revoked or after his license has not been renewed, the Court may enter a judgment perpetually enjoining the defendant from further engaging in plumbing contrary to this Act. In case of violation of any injunction entered under this Section, the Court may summarily try and punish the offender for contempt of Court. Such injunction proceedings shall be in addition to, and not in lieu of, all penalties and other remedies in this Act provided." 225 ILCS 320/29(2) (West 1996).

In the matter before us, the State has not attempted to prosecute Cassidy for any past violations of the Illinois Plumbing License Law. It merely seeks to enjoin him from violating the statute in the future.

The State's enforcement action was originally com-

menced in the circuit court of Du Page County, but was subsequently transferred to Kane County, where Cassidy had brought a related action for injunctive and declaratory relief against the City of Aurora. The State and Cassidy each filed motions for summary judgment. 735 ILCS 5/2—1005 (West 1996). The materials presented to the circuit court in support of the parties' respective motions showed that Cassidy is in the business of designing and installing "lawn sprinkler systems" as that term is defined by section 2 of the Illinois Plumbing License Law (225 ILCS 320/2 (West 1996)).

Cassidy's lawn sprinkler systems consist of underground pipes and sprinkler heads connected to a customer's potable water supply by means of a reduced pressure zone backflow prevention device, known as an RPZ valve. RPZ valves are necessary because without them, changing pressure could pull contaminated water from a customer's lawn into the house's water supply. Among the type of contaminates that must be guarded against in a lawn sprinkler system are fertilizers, insects, pesticides, and fecal matter from animals.

When an RPZ valve is installed and operating properly, there is no threat of backflow contamination to the potable water supply. Cassidy always uses licensed plumbers to install the RPZ valves on his systems. That is not the case with every lawn sprinkler company. Some do not use licensed plumbers to install the valves, and some do not use the valves at all.

After considering the parties' respective positions, the circuit court ultimately granted Cassidy's motion for summary judgment and denied the motion for summary judgment filed by the State. The circuit court held that the Illinois Plumbing License Law was designed to guard "the public's right to a protected potable water supply, free of contamination resulting from inadequate installation procedures." In the court's view, this interest was

adequately served by Cassidy's use of licensed plumbers to install RPZ valves on his lawn sprinkler systems. Once an RPZ has been properly installed, the court held, it constitutes "an absolute deterrent to the contamination of potable water within the system." Accordingly, the court believed that requiring Cassidy to also use licensed plumbers, rather than laborers, to install the pipes and sprinkler heads could do nothing to advance the purposes of the Illinois Plumbing License Law and lacked any rational basis. The court therefore ruled that the statute was unconstitutional as applied to Cassidy and his company.

The State has now appealed. Because the circuit court found that the statute, as applied to Cassidy and his company, is unconstitutional, the State's appeal lies directly to this court under our Rule 302(a) (134 Ill. 2d R. 302(a)). *Fletcher v. Williams*, 179 Ill. 2d 225, 228 (1997).

We review *de novo* the circuit court's decision with respect to a statute's constitutionality. *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 420 (1996). The party challenging the validity of a statute bears the burden of clearly establishing any constitutional invalidity. A statute is presumed to be constitutional, and when construing a statute, a court should uphold the statute's validity if reasonably possible. *People v. Jeffries*, 164 Ill. 2d 104, 111 (1995).

Cassidy contends that the statute violates substantive due process guarantees under the federal and state constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. He further argues that the statute contravenes our state constitution's prohibition against special legislation. Ill. Const. 1970, art. IV, § 13.

Although expressed in slightly different language, the standard used to determine whether a statute violates substantive due process is identical to the stan-

dard for assessing whether a statute denies equal protection. *People v. R.G.*, 131 Ill. 2d 328, 362 (1989). Where, as here, the legislation does not affect a suspect class or fundamental right and does not differentiate based on illegitimacy or gender, it is subject to a rational basis test. *Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 33 (1996). Such legislation will survive a substantive due process challenge so long as it is reasonably designed to remedy the evils the legislature has determined to be a threat to the public health, safety, and general welfare. *People v. Bradley*, 79 Ill. 2d 410, 417 (1980). The statute need not be the best means of accomplishing the legislature's objectives. See *Shelton v. Industrial Comm'n*, 267 Ill. App. 3d 211, 218 (1994). As long as the statute is rationally related to a legitimate state interest, it will be upheld. *People v. Kimbrough*, 163 Ill. 2d 231, 237 (1994).

Whether a statute is wise and whether it is the best means to achieve the desired result are matters left to the legislature, and not the courts. *People v. Shephard*, 152 Ill. 2d 489, 503 (1992). The judgments made by the legislature in crafting a statute are not subject to courtroom fact finding and may be based on rational speculation unsupported by evidence or empirical data. *Cutinello v. Whitley*, 161 Ill. 2d 409, 421-22 (1994). Under the rational basis test, the court may hypothesize reasons for the legislation, even if the reasoning advanced did not motivate the legislative action. See *Illinois Health Care Ass'n v. Illinois Department of Public Health*, 879 F.2d 286, 289 (7th Cir. 1989). If there is any conceivable basis for finding a rational relationship, the law will be upheld. *People v. Hamm*, 149 Ill. 2d 201, 216 (1992).

As previously indicated, Cassidy contends that the Illinois Plumbing License Law, as applied to him, also violates the special legislation clause of the Illinois Constitution. That provision states:

"The General Assembly shall pass no special or local law when a general law is or can be made applicable.

Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const. 1970, art. IV, § 13.

The special legislation clause expressly prohibits the General Assembly from conferring a special benefit or exclusive privilege on a person or a group of persons to the exclusion of others similarly situated. The purpose of this clause is to prevent arbitrary legislative classifications that discriminate in favor of a select group without a sound, reasonable basis. As with substantive due process, a special legislation challenge is generally judged under the same standards applicable to an equal protection challenge. Accordingly, the issue here, as with Cassidy's due process claim, is whether the Illinois Plumbing License Law satisfies the rational basis test. *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 393 (1997).

The Illinois Plumbing License Law is premised on the principle "that the regulation of plumbing and the plumbing trade is necessary for the protection of the public health, convenience, and welfare." 225 ILCS 320/1 (West 1996). Cassidy does not question this principle, nor does he deny that requiring the use of a licensed plumber to install the RPZ valve on a lawn sprinkler system is rationally related to the state's interest in protecting the public. The dispute in this case centers solely on Cassidy's failure to also use licensed plumbers for the installation of the sprinkler systems' pipes and sprinkler heads. Cassidy argues that because a properly installed RPZ valve effectively eliminates the risk that the potable water supply will be contaminated, requiring that licensed plumbers also be used to install the pipes and sprinkler heads does nothing to advance the purpose of the statute.

The problem with Cassidy's argument is twofold. First, it erroneously assumes that the presence of an RPZ valve renders deficiencies in the piping system irrelevant from a public health standpoint. While it is

undisputed that an RPZ valve is effective in preventing contamination of a homeowner's water supply, it is also true that such valves can fail or be bypassed or disabled. Answers to interrogatories filed by the State indicate that where the backflow device is inoperable, the way in which the pipes have been installed can serve as a "secondary safeguard for water quality." In addition, if pipes are not properly installed, leaks can pose a threat to the groundwater table. The design and workmanship of the piping system may therefore have important public health consequences. The legislature could certainly have concluded that such work should not be entrusted to those who do not possess the skill, experience and scientific knowledge required of licensed plumbers.

The second problem with Cassidy's argument is that it fails to recognize that avoiding contamination of the potable water supply is not the sole purpose of the Illinois Plumbing License Law. As previously indicated, the statute is, by its own terms, intended to serve the broader objective of protecting "the public health, convenience, and welfare." 225 ILCS 320/1 (West 1996). Requiring the use of licensed plumbers serves this broader objective by affording greater protection to consumers.

When a consumer installs a lawn sprinkler system at his own home or a home he leases, he proceeds at his own risk. When he hires a company to do the installation for him, on the other hand, he must rely on the expertise of others. Because of the extensive training and experience necessary to become a licensed plumber, the legislature could reasonably have believed that requiring the use of such plumbers would result in higher quality installations less prone to leaks and other problems. The importance of such protection is manifest considering that a defective or improperly installed lawn sprinkler system can damage a consumer's lawn or the foundation of his home.

Cassidy argues that licensed plumbers may not receive specific instruction on lawn sprinkler systems as part of their training and apprenticeship. Although he is correct, all plumbers do learn the skills, theories, and general principles involved in the installation of such systems. With an unlicensed laborer, by contrast, consumers have no assurance of even the most rudimentary plumbing skills.

Another benefit of the licensure requirement is that it provides consumers with significantly greater recourse in the event of a problem. If a lawn sprinkler is designed or installed improperly, civil remedies are available regardless of whether the installer was licensed or not. Criminal fines may also be imposed. 225 ILCS 320/29 (West 1996). Where the installer is licensed, however, there are important additional administrative remedies. If work is performed negligently or incompetently or if the installer willfully violates "any law of this State or any rule, regulation or code promulgated thereunder regulating plumbing," that individual is subject to having his or her licensed suspended or revoked. 225 ILCS 320/20(1)(b), (1)(c) (West 1996). Where the installer has no financial resources, this may be the only real punishment available and the only effective mechanism for protecting the public from incompetent or unscrupulous installers.

In making this observation, we do not mean to cast any aspersions on Cassidy or his company. No claim has been made that the systems he installs are defective or dangerous in any way. The only problem with them is that Cassidy does not use licensed plumbers to install the pipes and sprinkler heads as the law requires. The licensure requirement may be imperfect; it may not guarantee that consumers will always receive the safest or best-built lawn sprinkler systems possible. For the reasons we have just discussed, however, it is rationally

related to a legitimate state goal, and that is all the federal and state constitutions require.

For the foregoing reasons, we reverse the judgment of the circuit court declaring the Illinois Plumbing License Law unconstitutional as applied to Cassidy and granting summary judgment in his favor. We remand the cause for further proceedings consistent with our opinion.

*Reversed and remanded.*

JUSTICE HEIPLE, dissenting:

Defendant Daniel Cassidy has since 1986 been engaged in the occupation of installing lawn sprinkling systems. The Illinois Department of Public Health now seeks to enjoin him from pursuing his occupation because the Illinois Plumbing License Law (225 ILCS 320/0.01 (West 1992)) requires that only licensed plumbers install such systems. Because I agree with the trial court's conclusion that this requirement is unconstitutional, I respectfully dissent from this court's opinion reversing the trial judge.

In *Scully v. Hallihan*, 365 Ill. 185 (1936), this court held unconstitutional a statute which provided that only licensed plumbers could lay and connect tile, concrete, and other nonmetallic piping for drainage systems and sewers, an activity known as "drain-laying." The court noted that little of the traditional skills or training of a plumber was required to perform drain-laying safely and effectively. *Scully*, 365 Ill. at 192. We therefore held the statutory requirement to be an unreasonable exercise of the state's police power and a violation of a citizen's "inalienable right to follow any legitimate trade, occupation or business which he sees fit." *Scully*, 365 Ill. at 191.

This same rationale applies to the instant case. As defendant notes, installing a lawn sprinkling system requires few of the skills for which plumbers are trained and licensed. The job is not much more difficult than

running a hose across a lawn after connecting it to a faucet. There is thus no reasonable justification for requiring sprinkler installers such as defendant to undergo the extensive training and certification process required of plumbers.

The State argues that contamination of potable water may occur through "backflow" at the site of a sprinkling system's connection to the main water source. Defendant does not contest, however, the State's authority to regulate this legitimate health concern through its existing requirement that a plumber install an approved backflow prevention device at the sprinkling system's origination point. See 77 Ill. Adm. Code § 890.1140 (1996). Defendant argues only that there is no rational reason to require that plumbers perform the separate task of laying the sprinkling system itself.

The State also argues that employing licensed plumbers to perform the entire operation may help prevent leaks in the sprinkling system, and will make it easier for customers to seek recourse against plumbers who have installed a sprinkling system unsatisfactorily, since the state maintains current addresses of all licensees. These groping speculations are insufficient, however, to justify depriving an individual of his livelihood when no clear threat to the public welfare is evident. "No citizen should be legislated out of his trade and have it awarded to another craft under the garb of a health measure where [the statute] is not definitely related to such measure." *Scully*, 365 Ill. at 192.

For these reasons, I would affirm the circuit court's judgment.

JUSTICE NICKELS joins in this dissent.